Caroline K. Simon, J.
This claim of wrongful death arises out of a homicidal assault inflicted on the infant decedent on June 28, 1962 by a mental patient at Rockland State Hospital who had been released from that institution on convalescent *291 status on March. 9,1962. Negligence is predicated on the alleged improper release from confinement of the patient by virtue of the alleged failure of the hospital authorities to diagnose and evaluate the patient’s vicious and assaultive propensities in accordance with accepted institutional practice and in failing to supervise the activities of the patient after his release, which failure resulted in the sexual attack upon and the death of claimant’s intestate by strangulation.
At the commencement of the trial claimant sought to introduce into evidence the patient’s Rockland State Hospital record and the Kings County Hospital record of the patient made after the assault, which record included a psychiatric examination conducted pursuant to court order to determine the patient’s sanity in connection with the disposition of a then pending criminal proceeding in which the patient had been charged with first degree murder. The Attorney-General objected to the admission of these records insofar as they contained entries concerning diagnosis, treatment and prognosis on the ground that they constituted privileged communications between physician and patient, disclosure of which was prohibited by CPLR 4504 (subd. [a]), citing as controlling precedent Matter of Coddington (307 N. Y. 181, 194 et seq.); Torres v. State of New York (14 Misc 2d 246) and Boykin v. State of New York (13 Misc 2d 1037, affd. 7 A D 2d 819).
In rebuttal claimant asserted that the discretionary authority vested in a Judge of a court of record to compel the production of hospital records pursuant to section 20 and subdivision 9 of section 34 of the Mental Hygiene Law by necessary implication embraced judicial authority to permit their introduction into evidence in the interests of justice, basing his argument upon the law as stated by the Court of Appeals in Matter of Warrington (303 N. Y. 129, 140) where it was decided that the physician-patient privilege could not be employed to ‘ ‘ unjustly hamper well-intentioned efforts made in behalf of an incompetent patient injured in a State hospital, to ascertain from hospital records the facts, if any, by which actionable fault of State agents may be proved ”.
After reserving decision as to the admissibility of the aforesaid records, the court admitted them into evidence. Because of the importance of the question presented to the proper disposition of the claim, the court will outline its reasons for so doing.
The Attorney-General conceded that the State, as the party asserting the privilege, bears the burden of showing its application in the present case.
*292 In order to meet this burden, defendant must generally establish that (1) the person Avhose testimony he seeks to exclude was authorized to practice medicine or dentistry or was a registered professional or licensed practical nurse, (2) the information to be.excluded was acquired by such person while attending the patient in a professional capacity, (3) the information was necessary to enable such person to act in that capacity, and (4) the information was intended to be confidential. (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4504.04.)
Directing attention first to the Rockland State record, it is clear that the defendant has adequately established the first three prerequisites to the assertion of the privilege. However, the court finds that it has failed to sustain its burden as to the fourth necessary element, namely, confidentiality.
The court is mindful of the often-expressed vícav that former section 352 of the Civil Practice Act, the predecessor to CPLR 4504 (subd. [a]), did not in so many words require that a communication be confidential or confidentially given in order to be privileged, and that the Court of Appeals has on numerous occasions rejected any attempt to confine the statute as then written to information of a confidential nature. (People v. Decina, 2 N Y 2d 133, 143.)
Though CPLR 4504 (subd. [a]) in many respects is almost identical to former section 352, it does contain a significant statutory change in title, i.e., “ Confidential information privileged ”. This new caption, in the court’s view, changes the emphasis so that the law on the subject and the controlling precedents to which the court gives full respect can be considered in relation to the new title. The newly added word reflects a concept that the patient intend the information communicated to the physician to be confidential. The neAV Avord must be read into the language of the ucav section by necessary implication, since the court perceives an express legislative mandate that the assertion of the privilege must rest on the ‘ ‘ confidential ’ ’ character of the information acquired in attending the patient and not simply on Avhether the information was acquired by a physician acting in a professional capacity.
The proper test noAv to be applied is Avhether in the light of all the surrounding circumstances the communication was intended to be confidential, and Avhether the injury to the patient Avhich might result from disclosure Avould be so great as to outweigh the benefit that disclosure Avould afford in placing before the court such information as is necessary for an informed judgment on the merits in the instant claim.
*293 We do not hold that the privilege may not be asserted by the defendant in connection with medical treatment afforded mental patients in State institutions on the theory that the professional relationship intended to be protected is overcome by the duty imposed on State medical officers to keep public records. (Scolavino v. State of New York, 187 Misc. 253, mod. on other grounds 271 App. Div. 618, affd. 297 N. Y. 460.) The Court of Appeals has foreclosed that case law application herein by its decision in Matter of Coddinton (307 N. Y. 181, 195, supra) in which it treated State doctors in the same fashion as private physicians.
Absent proof of any intention on the part of the patient that any information obtained by the Rockland State Hospital authorities which might be said to be necessary for his treatment was meant by the patient to be confidential, and finding nothing in the portions of the hospital record, to which no objection was made, to Avarrant a contrary conclusion, the court’s next task is to determine whether disclosure should be prohibited in the interests of protecting the patient.
A review of the record reveals no evidence which would require application of the privilege to protect the interests of this patient. Defendant’s effort to use the privilege would frustrate the administration of justice by shielding disclosure of the only record from which claimant can introduce evidence to sustain his burden of proof on the issue of liability. We have no reason to believe that the Legislature in enacting the physician-patient privilege, a privilege unknown to the common law, ever intended such a result. We find that the proper disposition of this claim requires the admission of the record absent a clear shoAving on defendant’s part that the privilege must be invoked in order to protect the legitimate interests of the patient. No such showing has been made.
We believe this ruling on admissibility to be consistent with the newly enacted C'PLR 4504 (subd. [a]) and the view expressed by the draftsmen of the rules that whatever the merit of encouraging the preservation of the privilege to maintain confidence between physician and patient, the privilege should not be employed as a means of suppressing evidence otherwise material to a proper judicial determination Avith the result that the merits of claims such as this one may never be reached. (Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4504.02, pp. 124-126.)
An independent ground exists to authorize the admission into evidence of the patient’s Kings County Hospital record where he underwent a psychiatric examination to determine Avhether *294 he was competent to stand trial for the crime of first degree murder. It is well settled that where a physician is required to examine a patient for a purpose other than treatment, the requisite relationship which gives rise to the privilege does not exist. Thus the hospital record of one accused of first degree murder, which record was made by the staff of the institution to which the accused was committed for observation subsequent to his arrest, has been held admissible in his criminal prosecution, even though the report of the psychiatric examination conducted in conjunction with his confinement must be excluded pursuant to the provisions of section 662 of the Code of Criminal Procedure. (People v. Draper, 278 App. Div. 298, 304, affd. 303 N. Y. 653, cert. den. 345 U. S. 944.)
Since the patient was declared to be unable to stand trial and is presently committed to Matteawan State Hospital, but may at some future date be subjected to criminal prosecution in the event of his rehabilitation, the court must necessarily disregard the report of the psychiatric examination contained in the Kings County record in order not to jeopardize the patient’s right to object to the introduction of that report if and when such a trial is held. (People v. Roth, 11 N Y 2d 80.)
These same considerations require the court on its own motion to strike from the record a purported confession offered for the purpose of identifying the patient as the assailant of the claimant’s intestate, which had been admitted into evidence over the objection of the Attorney-General. The patient’s constitutionally protected right to object to the introduction of the confession as not “ ‘ the product of a rational intellect and a free will ’ ” (Townsend v. Sain, 372 U. S. 293, 307) and thus inadmissible as involuntary, should not be proscribed by its introduction in a civil action held prior to the possible commencement of a criminal prosecution where that issue must be decided in the first instance. Moreover, unlike Ando v. Woodberry (8 N Y 2d 165) a case clearly distinguishable from this one, there is no question but that the confession must be excluded as a hearsay record not binding on the defendant as an admission against interest. However, the court finds that there is sufficient other evidence contained in the administrative records of Rockland State Hospital, the autopsy performed on the infant decedent, and the victim’s death certificate to support the allegations of the within claim that the wrongful death of the claimant’s intestate was the result of an assault perpetrated by the patient named therein.
After admitting the aforesaid Kings County Hospital record, but not the psychiatric examination, the court granted claimant’s *295 motion to amend the claim to include an allegation of negligence predicated on violation of pertinent mental hygiene regulations regarding after-care clinic treatment afforded the claimant subsequent to March 9, 1962, over the Attorney-General’s objection that such amendment would constitute a new cause of action and thus surprise the defendant. The court finds that the claim as originally filed is broad enough to support such amendment without prejudice to the defendant within whose possession the patient’s record was and whose objection of surprise cannot be sustained.
The Rockland State Hospital record reveals that the patient, a male, at the age of 13 was admitted to that institution on June 23, 1959 pursuant to an order of certification under section 74 of the Mental Hygiene Law. Psychiatric entries made while he was under observation at Bellevue Hospital indicate that the patient was a schizoid personality with a full-scale I. Q. of 67 who had demonstrated suicidal tendencies and assaultive behavior toward his younger brother. His mental condition was such as to indicate poor contact, bizarre infantile behavior and autistic thinking, sufficient to permit a diagnosis of childhood schizophrenia by the Bellevue examining psychiatrists. The initial diagnosis at Rockland was “ Primary Behavior Disorders in Children, Conduct Disturbance ” based on an examination which revealed " no trends, delusions or hallucinations ’ ’; and this diagnosis was adhered to thereafter. It was noted that the patient’s father was an alcoholic and a poor provider, and that his mother with whom he resided prior to his commitment was ‘1 quite emotionally labile and incapable of providing a stable home environment for her son ’ ’, which factors in the opinion of the patient’s treating physician, accounted for the patient’s observable general intellectual and physical retardation. Occupational therapy and psychotherapy were recommended in order to enable the patient to mature further so as to establish some firm relationship on which to function. The patient’s release at some future time was contemplated but not before social service investigation of the home environment was made.
The patient was released in the custody of his mother on convalescent status on two separate occasions prior to March 9, 1962, the first period running from May 22, 1960 to January 31, 1961, and the second period running from July 28, 1961 to November 16, 1961. Before each release period a presentation was prepared at the hospital in which the patient’s general condition was evaluated as much improved, based on numerous ward entries, classroom observations and clinical notations, all of which support the findings contained therein that while con *296 fined to the hospital the patient was quiet, generally co-operative, well oriented, in good contact and showed no overt psychotic symptoms. Prior to each release on convalescent status the patient was examined by a medical screening board because of the suicidal and assaultive tendencies noted in his admission record. Each time he was found to be in good contact and free from any delusions or hallucinations.
There was no evidence in the record to support a finding that the patient at any time exhibited any abnormal psychosexual tendencies either during his periods of confinement or while on convalescent status.
The hospital record further reveals that the patient’s return to the hospital from such convalescent status was attributable to the unstable character of his mother, the poor home environment and the inability of the mother to control the conduct of the patient, all of which were stated to have resulted in juvenile acting out and aggressive behavior toward the mother and the patient’s brothers.
The claimant’s medical expert testified without contradiction that in his opinion the defendant’s hospital authorities did not exercise that degree of skill consistent with good institutional practice in their failure to diagnose the patient’s condition as childhood schizophrenia which diagnosis, he testified, would have been consistent with their own findings concerning the patient’s behavior and inconsistent with the diagnosis adhered to by the institution of “ primary behavior disorder in children, conduct disturbance”; and that they failed also to make a Rorschach test of the patient, which test had been ordered by one of their staff, but never given. He asserted that without a Rorschach test the institution had insufficient information on which to make a proper diagnosis due to the patient’s own limitations and that the test, if administered, could have been expected to reveal the patient’s inner mental motivation not otherwise obtainable. Claimant’s expert was also of the opinion that they failed to give sufficient consideration to the patient’s demonstrated antisocial behavior on his two prior home stays on convalescent status, when his behavior was so antisocial, the claimant’s expert testified, as to require the hospital to refrain from permitting the patient to be placed on convalescent status in the custody of his mother a third time; and that in addition they failed to exercise that degree of supervision of the patient required of them during his third release on convalescent status, in failing to require his return to the institution after repeated nonappearance by the patient for after-care clinical appoint- *297 merits, all of which the claimant states to be in violation of pertinent Regulations of the Department of Mental Hygiene.
The reasonable value of funeral expenses of $1,926.94 and the cost of a headstone at $783.75 were stipulated to by both parties.
The defendant rested at the conclusion of claimant’s case and made motions to dismiss, on which the court reserved decision.
Having given careful consideration to the afore-mentioned hospital entries and the testimony elicited from claimant’s highly qualified and credible medical witness, the court finds that on the evidence presented, viewed in the light most favorable to claimant, there has not been sufficient proof on which to hold the defendant liable.
The decision to diagnose the patient’s condition as other than childhood schizophrenia and to authorize his release on convalescent status in the custody of his mother on three separate occasions, prior to each of which the patient was examined by a medical screening board for the very purpose of evaluating his then condition in light of prior findings of suicidal and assaultive behavior, are matters of professional medical judgment to which no liability attaches, even if the exercise of that judgment proves to be erroneous. (Taig v. State of New York, 19 A D 2d 182.) The failure to examine the patient by means of a Rorschach test is in and of itself no evidence of negligence, unless it could be shown that such a test would have revealed latent homicidal assaultive tendencies which would have required constant institutional supervision. No such showing has been made.
It is recognized that the rehabilitation of the mentally ill by placement of patients in convalescent status, with due regard for public safety, is a desirable therapeutic goal, and that the means employed to achieve that end must necessarily involve a degree of calculated risk. (Regulations of the Department of Mental Hygiene, § 37.1, 13 NYCRR 37.1; Taig v. State of New York, supra.) Section 37.11 of the afore-mentioned regulations requires the classification of a patient on convalescent status who has been lost to contact for a reasonable period as on “ escape ” and thus subject to apprehension and restraint only if the patient is considered to have dangerous tendencies. This provision by its express terms makes that determination as to dangerous tendencies a matter of professional judgment, which judgment, as previously noted, does not create grounds for a finding of actionable fault, even if the judgment be erroneous. Claimant’s fourth ground on which he seeks to establish defendant’s negligence is thus rendered untenable.
*298 Grievous though the death of the four-year-old victim is, these well-settled principles require the dismissal of the instant claim. “ If a liability were imposed on the physician or the State each time the prediction of future course of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated.” (Taig v. State of New York, supra, p. 183.)
Motions to dismiss made by the Attorney-General at the end of the claimant’s case are denied. These same motions to dismiss made at the end of the entire case, on which decision was reserved, are now granted.