Keating, J.
Recently in Matter of James (22 N Y 2d 545)
we had occasion to consider the constitutionality of the provisions of the Narcotics Control Act of 1966 as they relate to the compulsory treatment of narcotics addicts who have neither been charged with nor convicted of any criminal activity. We upheld the substantive provisions of the law, but certain constitutional deficiencies were found in its procedural provisions. In these five cases, the constitutionality of the provisions of the act as they apply to the commitment of the addict convicted of a crime is attacked.
The statutory framework for the convicted addict program is to be found in sections 207 and 208 of the Mental Hygiene Law (see, also, Mental Hygiene Law, § 210). Under the law, certification to the custody of the commission may occur in one of two ways. If the defendant petitions the court that he is an addict and requests civil commitment, the court may in its discretion grant the application provided the defendant meets certain stringent requirements. He must have had no prior felony conviction, no previous certification, and the present-charge against him must be one not punishable by death or life imprisonment. In addition, if he faces a felony charge, the District Attorney must also consent. The effect of the granting *300 of a request for civil certification is to bring about an automatic dismissal of the criminal charges with no loss of civil rights as a citizen (Mental Hygiene Law, § 210, subd. 3).
Where, however, for various reasons, other than nonaddiction, civil commitment is ruled out, the trial of the criminal charges will then proceed. If the trial terminates in a conviction, be it by plea or after trial, the trial court will review the report of the medical examination and, if the court is satisfied that there is reasonable cause to believe the defendant is a narcotics addict, it must, in all cases where the defendant stands convicted of a crime punishable other than by death or life imprisonment, notify the defendant of its opinion and ask the defendant whether he wishes to admit to the addiction (Mental Hygiene Law, § 208, subd. 1). Before making the inquiry, however, the court must also inform the defendant of his right to deny or stand mute on the issue and his right to a hearing with respect to the issue of his addiction. .
If., either by admission or after a hearing, it is found that the defendant is an addict, and the crime involved is a misdemeanor or the offense of prostitution, the court must certify the defendant to the commission’s custody for a period of three years (Mental Hygiene Law, § 208, subd. 4, par. a). In the case of a felony conviction, however, the court has discretion to certify a defendant to the commission’s custody for a period of up to five years. In both situations the addict may be discharged earlier as rehabilitated (Mental Hygiene Law, § 208, subd. 4, par. b). If the court does not follow this course, the defendant is sentenced in accordance with the provisions of the Penal Law. Defendants convicted of a crime punishable by death or life imprisonment are ineligible for certification even if they are addicts (Mental Hygiene Law, § 208, subd. 1).
Finally, the statute specifies that certification to the custody of the commission after conviction shall be deemed a- judgment of conviction (Mental Hygiene Law, § 208, subd. 5).
The constitutional objections raised are these. It is claimed that the constitutional rights of appellants were violated when statements obtained from them in the absence of counsel by the arresting police officer or during the course of the medical examination conducted to determine addiction were admitted *301 in evidence at their addiction hearings. Also, it is contended that the statute is unconstitutional both in providing for a trial without a jury on the issue of addiction and in requiring proof of addiction by only a preponderance of the evidence, rather than beyond a reasonable doubt (Mental Hygiene Law, § 208, subd. 2).
We hold that in failing to accord a convicted addict a jury trial on the issue of his addiction, section 208 (subd. 2) of the Mental Hygiene Law violates the equal protection clause of the Fourteenth Amendment. Save in that respect the statute contains no constitutional defect, and no constitutional rights of appellants were violated at their hearings.[1]
By its terms New York’s Narcotic Control Act of 1966 recognizes that drug addiction is a “disease ” and that an addict is a sick person in need of treatment (Mental Hygiene Law, § 200). The basic premise of the narcotic control program is and constitutionally must be a rehabilitative one. The extended period of deprivation of liberty which the statute mandates can only be justified as necessary to fulfill the purposes of the program. If not, the program constitutes an unconstitutional punishment for addiction since the maximum jail sentence for a misdemeanor is one year, not three years, and in the case of certain felonies the maximum sentence is less than five years.
Bearing in mind the basic purpose of the statute, we turn to the specific constitutional objections. It is argued that the statements obtained from an alleged addict by the commission’s examining physician and which are then received in evidence to support the finding of addiction are inadmissible by reason of the fact that they were obtained in the absence of counsel. In other words, Miranda v. Arizona (384 U. S. 436); Massiah v. United States (377 U. S. 201); People v. Rodriguez (11 N Y 2d 279) and People v. Meyer (11 N Y 2d 162) are applicable.
These medical examinations, however, are used solely for diagnostic purposes. Any admission made to the doctor may not be received in evidence at the trial on the criminal charges *302 (Mental Hygiene Law, § 207, subd. 6) ,[2] As the program is intended solely for the addict’s benefit, self incrimination becomes irrelevant. The addiction hearing is not designed as a means of giving an added sentence, but is intended to serve the function of assuring that the physician’s conclusion that the defendant is an addict is soundly based. It is the nonincriminating purpose of the examination that makes the privilege against self incrimination and the right to counsel inoperative at the physicial examination.
Appellants rely upon Matter of Gault (387 U. S. 1) where the Supreme Court rejected any notion that because a State has labeled a proceeding as civil in nature will control the court’s determination of what constitutional protections are required (387 U. S., pp. 22-26, 49-52). In Gault, after a thorough review of the history of juvenile courts and the literature in the area, the Supreme Court concluded that the only difference between juvenile proceedings and adult criminal proceedings is that a juvenile has none of the safeguards he would have, had he been an adult (387 U. S., p. 29). It was this consideration that was decisive, not the tag 1 ‘ civil ” or “ criminal ’ ’ and not whether there was or was not any finding of guilt.
All jails in some measure seek to have a program of rehabilitation, but in upholding, by way of dictum, a compulsory civil commitment program for narcotics rehabilitation, in Robinson v. California (370 U. S. 660, 669) the Supreme Court was referring to a full and complete program of treatment. Compulsory commitment must indeed be something ‘ ‘ beyond the hanging of a new sign—reading ‘ hospital ’— over one wing of the jailhouse ” (Powell v. Texas, 392 U. S. 514, 529).
If compulsory commitment turns out in fact to be a veneer for an extended jail term and is not a fully developed, comprehensive and effective scheme, it will have lost its claim to be a project devoted solely to curative ends. It will then take on the characteristics of normal jail sentence, with a side order of special help. The moment that the program begins to serve *303 the traditional purposes of criminal punishment, such as deterrence, preventive detention, or retribution, then the extended denial of liberty is simply no different from a prison sentence (United States ex rel. Gerchman v. Maroney, 355 F. 2d, 309-310 [3d Cir.]) and the constitutional guarantees applicable to criminal proceedings will apply in full measure.
It is the reality that counts, not the metaphysical distinctions of the legal mind. For the same reason, it is not every deprivation of liberty that will bring into play all the constitutional provisions applicable to crimimil_ trials. It is only those curtailments of liberty which serve the traditional purposes of the criminal law which require the full protections of a criminal trial.
The record is barren, however, of any evidence that the detention compelled under the .statute is in effect punitive punishment, that there is no chance of cure and that this program is a sham and a cover up for the putting away of addicts for a few more years. If it were, society would have to find some other means of dealing with the problem. The substantive aspect of the program is entitled to a presumption of constitutionality, at least and until a record is established otherwise. For these reasons, we conclude that the appellants ’ privilege against self incrimination and right to counsel were not violated when evidence was received of admissions of addiction made to examining physicians during the course of court ordered examinations.[3] ****8
*304 Appellant Watson’s objection to the .reception of an admission of addiction made to a police officer upon her arrest should be viewed in like manner. The analysis of the applicability of constitutional rights and privileges to the medical examinations for addiction is equally suitable for the statements made to the police officer and, having concluded, in essence, that the protections of the criminal law are not required here because of the nature of the program, we hold the statement to the police officer was admissible.
A somewhat similar analysis will resolve the difficulties presented by the claim that the standard applied in criminal trials —proof of addiction beyond a reasonable doubt, rather than the prescribed preponderance of evidence (Mental Hygiene Law, § 208, subd. 2)—is necessary for a finding of addiction. Since the purpose of the certification is a rehabilitative one, it is legitimate to analogize it to a civil proceeding commenced against a noncriminal addict where the finding also may be made by a preponderance of the evidence. Nor can it be asserted that a higher burden is necessary to protect the alleged addict from a wrongful determination. The deprivation of his liberty will last only so long as is necessary to carry out the program -of rehabilitation. We will not assume that the commission or its medical personnel will continue to deprive a person of his liberty if they determine that he is not truly an addict.
Since we have come to the conclusion that the requisites of a criminal trial are not applicable to these proceedings, it necessarily follows that there is no rational basis for denying a jury trial to appellants, when it is given in a proceeding instituted against a noncriminal addict (Mental Hygiene Law, § 206, subd. 4, par. a).
The issue in both proceedings is identical. A convicted addict committed to the control of the commission is in theory subjected to the same intensive rehabilitation program as is the addict committed under the purely civil program. In addition, the convicted addict is to be released when cured, whether or not the length of deprivation of freedom is proportional to the gravity of the act for which he or she was committed (see Mental Hygiene Law, § 204).
*305 It is urged that the conviction of a defendant subjects him to incarceration by virtue of that judgment. The fallacy of this argument is that, if the substantive crime committed is a misdemeanor, the State has the right to deprive the defendant of his freedom for a period of only one year, not three years. After one year he would be entitled to regain his freedom. The justification for the loss of liberty for periods beyond the maximum authorized sentence for the crime must, therefore, rest on some other basis — the program’s civil or nonpunitive aspect. The commitment, therefore, does not differ from purely civil commitment proceedings in nature, purpose and effect, and the right to jury must obtain.
The case law both in the Supreme Court and in this court fully supports the right to jury trial here. In Baxstrom v. Herold (383 U. S. 107) the Supreme Court held unconstitutional the procedure under New York law wherein a jury trial was granted to all persons civilly committed as mentally ill, other than those civilly committed at the expiration of their prison sentences. The Supreme Court did not rest its decision on the argument, which the People urge makes it distinguishable, that a prisoner whose term was expiring was in the same position as a noncriminal. Bather, in the words of the court, the ‘ ‘ distinction made [must] have some relevance to the purpose for which the classification is made. Walters v. City of St. Louis, 347 U. S. 231, 237. Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill at all.” (383 U. 8., p. 111; emphasis in original.)
Following Baxstrom, we held that a person acquitted of a crime by reason of insanity is entitled to a jury trial on the issue of whether his own protection or that of society requires his continued detention (People v. Lally, 19 N Y 2d 27). Thus, the fact that there is or is not an underlying conviction is wholly immaterial to the issue to be decided.
The fruitlessness of an argument based on the simplistic view that we are not involved here with a guilt-finding mechanism is readily apparent when it is recalled that the most important consequence of a finding of guilty is not the stigma of convic *306 tion but the incarceration which normally attends the finding. If it were the finding that is most significant, one can easily imagine a statutory scheme which would give the power to the court to try all serious crimes by reducing all felony sentences to six months and then providing that a separate hearing should be held to determine the danger to society if the defendant is not jailed for a longer period. The rights of jury trial and of counsel as well as the privilege against self incrimination cannot be so easily destroyed. It is the substance not the form that will control.
One final argument made is that requiring jury trials will impose a tremendous burden on the courts. Something more than this is required. Since the addiction hearing for civil commitments and for convicted addicts are alike both in substance and consequence, a jury trial must be available to the appellants here.
Nonconstitutional arguments have also been argued. Two of them, because they will surely arise again, warrant discussion. The first is a question of statutory construction, and the second involves the scope of cross-examination of medical experts in addiction hearings.
Appellants Brown and Cheese assert that medical records and statements made to physicians and protected by the physician-patient privilege (CPLB, 4504) were improperly received in evidence at their addiction hearings. Although the patterns of each case vary, the contentions are essentially the same. Only the information obtained at an examination specifically ordered by the court to be conducted pursuant to section 207 may be utilized at the addiction hearing. In the context of these cases, the issue presented is whether the early “ intake ” examination (which is an examination normally made as soon as an arrested person arrives at his initial place of incarceration following arraignment) or whether medical treatment for withdrawal symptoms is an examination made ‘ ‘ pursuant to ’ ’ subdivision 5 of section 207.
There is no question that the statutory language is of little assistance in determining the Legislature’s intent. Some provisions indicate appellants’ contentions are correct, while others would support the People’s position that the “ intake ” examination— even where no examination for addiction has been *307 specifically ordered by the arraigning Judge—may serve a dual purpose of not only ascertaining the general state of appellants’ health but, additionally, whether a prisoner is addicted to drugs. However, as the purpose of the privilege is to induce . persons to seek medical assistance by removing any fear that they will suffer embarrassment or disgrace or that any information disclosed to the physician will not be used adverse to them, the use of information obtained at intake examination or during the giving of medical treatment runs counter to this purpose if, as it appears, addicts consider the custody of the commission adverse to their interests. Moreover, the intake examination is also used to protect the general health of the inmate population, and its usefulness may well be impaired by a rule of disclosure. How the Legislature weighed these considerations is not easily discernable.
It appears that in the resolution of the question we must, as in the case of so many other questions in this case, return to the fundamental issue whether any information obtained at an examination used to determine addiction is adverse to the addict’s interest, or one for his benefit (Milano v. State of New York, 44 Misc 2d 290, 292). As we have analyzed the question above, various constitutional requirements applicable to criminal trials are not necessary here because of the rehabilitative purposes of the treatment afforded under the Narcotics Con- . trol Law. For this reason, it would appear that, until the Legislature speaks more clearly, we may fairly presume an intent on its part that the privilege will not apply.
The second nonconstitutional issue is raised by appellant Singleton. He objects that the trial court improperly limited the scope of his counsel’s cross-examination of the People’s medical expert about the criteria the expert used in reaching his conclusion that appellant was an addict. There are three characteristic mental and physical responses which physicians look for in determining whether a person is an addict: (1) physical dependence (as evidenced by the occurrence of withdrawal sickness upon the termination of the use of narcotics) ; (2) tolerance (as evidenced by the requirement of ever-increasing doses of narcotics to achieve the same euphoric effect or “ high ”); (3) emotional dependence or habituation. (For definitions of these terms, see Maurer and Vogel, Narcotics and Narcotic Addiction [3d ed., 1967], 33.)
*308 The People’s expert in the Smgleton ease testified that appellant was an addict. He was then cross-examined as to each of these three phenomena, i.e., whether there was tolerance, physical dependence and emotional dependence. Defense counsel, in a rather inartful manner, then attempted to elicit from the doctor whether one, two or all three characteristics were present before the doctor would or could decide that the person was an addict. The court refused to permit this, apparently of the view that defense counsel was asking the doctor a question concerning a conclusion of law which the court was required to make. This was error.
The term ‘ ‘ narcotic addict ’ ’ is defined by the law (§ 201, subd. 2) as a person who, at the time of the examination, is 1 ‘ dependent upon [a narcotic drug] or who by reason of repeated use of any .such drug is in imminent danger of becoming dependent ”. The issue at the hearing is whether the addict is dependent or in imminent danger of becoming dependent. The term “ dependent ” is not defined by the statute, but in Matter of James (22 N Y 2d 545, supra) we defined the term “ addict” as a person “no longer able to control [his] craving for narcotics” (p. 551). This is the ultimate issue which the court must determine. In determining whether a patient is an addict, the court considers evidence as to the person’s history of drug use, ability to cope with personal problems by socially acceptable methods, general mental situation and, of course,, medical symptomology (Matter of James, supra; Matter of DeLaO, 59 Cal. 2d 128, cert. den. 374 H. S. 856 ; People v. Victor, 62 Cal. 2d 280; People v. Bruce, 64 Cal. 2d 55).
But these medical criteria do not have the force of law and they do not constitute the definition required by the statute. Since the court permitted the. doctor to state the general conclusion that the patient was an addict, it was certainly proper cross-examination for defense counsel to ask the doctor what his interpretation of addiction was and, in reaching his conclusion, what weight he gave to each fact or criterion. The purpose no doubt was to ascertain if there was any discrepancy, between the doctor’s views and general medical opinion, and also to .see if there was reason behind the conclusion. CPLR 4515 expressly permits such questions: “Upon cross-examination he [expert witness] may be required to specify the data and *309 other criteria supporting the opinion. ’ ’ While the chief purpose of this provision was to get away from hypotheticals which are meaningless to juries and oftentimes to Judges, its ultimate goal is to permit a searching examination of the underpinnings of an expert’s conclusion.[4]
We pass on no other question.
Since there has been a reversal to assure the defendants jury trials on the addiction hearings and since such jury trials are not available in New York City Criminal Court, the proceedings should be remitted to that court with directions that the hearings be transferred to the Supreme Court for trials before juries there to be selected.
Chief Judge Fuld and Judges Burke, Bergan, Breitel and Jasen concur, Judge Scileppi solely upon the ground that defendant is entitled to a jury trial.
In each case: Judgment reversed and case remitted to the Criminal Court of the City of New York for further proceedings in accordance with the opinion herein.

. Recent articles discussing the various problems raised by the Narcotic Control Act of 1966 include: Commitment of the Narcotic Addict Convicted of Crime, Comment, 32 Albany L. Rev. 360; Note, Due Process for the Narcotic Addict? The New York Compulsory Commitment Procedures, 43 N. Y. U. L. Rev. 1172.

. The same applies to the arresting police officer’s observations and the reports of the examining physicians to the court. Under no circumstances are these to be used against the defendant at his criminal trial (Mental Hygiene Law, § 207, subd. 5), but are only considered by the trial court in 'deciding whether to commit the defendant to the custody of the commission if he is convicted of the criminal charge.

. The People contend that this is an independent sentencing proceeding similar to the one day to life sex offender statutes (Specht v. Patterson, 386 U. S. 605; People v. Bailey, 21 N Y 2d 588; United States ex rel. Gerchman v. Maroney, supra) and that Specht only requires the right to counsel, the right to confront witnesses .and the .right to present evidence. Although the issue has not .been specifically decided, there are strong indications that, because of the possible additional period of deprivation of freedom involved, a higher burden of proof may be required (Specht v. Patterson, 386 U. S., supra, p. 608; see, also, United States ex rel. Gerchman v. Maroney, 355 F. 2d, supra, pp. 300-310 [3d Cir.]). No doubt one goal of these statutes is to give a defendant special psychiatric help, but another principal purpose of the statute is to keep persons who are considered likely recidivists and dangerous to others in jail for an extended period. This is a normal attribute of criminal sentencing procedure, and all the protections of criminal proceedings, including the privilege against self incrimination, access to counsel at all times, proof beyond a reasonable doubt and the right to a jury trial, may well apply.

. Even if we were to assume that the three criteria constitute the statutory definition, the usual rule that an expert is not permitted to give an opinion on the ultimate issue in the ease cannot be applied. For, in that event, the law will have adopted the medical definition or the medical model, and it would, therefore, be a controlling question whether all three characteristics must be present. This ease is not like the situation where an expert is asked to give an opinion as to whether certain conduct is negligent or whether a defendant may or may not be insane under a medical definition, for the medical definition and the legal definition may not coincide (cf. Washington v. United States, 390 F. 2d 444).