OPINION OF THE COURT
Kenneth H. Lange, J.
This is an action for declaratory and injunctive relief by several persons who are confined involuntarily at the Harlem Valley Psychiatric Center (hereinafter the hospital) in Wing-dale, New York. The plaintiffs seek (1) a declaration that they have the right to have their attorney present whenever they are examined by a psychiatrist whom the hospital intends to have testify with respect to their involuntary commitment; (2) a declaration that the privilege against self-incrimination applies at such examinations and that the patient may refuse to submit to such examination; and (3) a permanent injunction requiring the hospital to notify the patient’s attorney whenever such an examination is to take place and to permit the patient’s attorney to attend and observe the examination. Presently before the court are a motion by the plaintiffs and a cross motion by the defendants for summary judgment.
The plaintiffs’ application is based upon their contention that the prehearing psychiatric interview is a critical stage of the proceedings for involuntary commitment, and that requiring them to submit to this examination without benefit of the privilege against self-incrimination and outside the presence of counsel violates their right to due process of law. The hospital argues that the right to due process does not extend so far, and that to permit the patient to have his attorney present and refuse to answer would frustrate the hospital’s legitimate efforts at treatment. The facts of the matter are not substantially in dispute.
Under Mental Hygiene Law article 9, a person can be confined against his will to an in-patient mental health institution either on an emergency basis for up to 72 hours (Mental Hygiene Law §§ 9.37-9.45); or on the basis of certifi *76 cates by two physicians for up to 60 days (Mental Hygiene Law §§ 9.27-9.31); or pursuant to court order for up to six months (Mental Hygiene Law § 9.33). Regardless of the manner of the commitment, a hearing is available to the patient either on his application or upon his request when the hospital applies for a court order. The burden of proof at such a hearing is upon the hospital to establish by clear and convincing evidence that the patient poses a substantial threat to himself or others and that involuntary commitment is the least restrictive means available for treatment (see, Matter of Harry M, 96 AD2d 201).
The primary evidence in virtually every one of these hearings is the testimony of a psychiatrist, employed by the hospital, who has not treated the patient. The testimony is based on the hospital record and a brief interview with the patient conducted shortly before the hearing. Although the hospital record is available to the patient’s attorney, no record is made of the interview. Because the patient is generally unable to reconstruct the interview for his attorney, the psychiatrist is the only source of testimony concerning it. The hospital has refused a formal request to allow the presence of counsel at the hearing.
Since the material facts are undisputed, the only question is one of law, and summary judgment is appropriate.
i
The fact that all of the plaintiffs have been retained pursuant to new court orders since this action was commenced does not render this action moot. By statute, the term of an involuntary commitment by court order cannot exceed six months (Mental Hygiene Law § 9.33 [b]). At the end of that period, the hospital must apply for a new court order if it wishes to retain the patient. Furthermore, the patient can, on his own application, obtain a hearing at any time, either under the terms of the statute (Mental Hygiene Law § 9.35) or by petition for a writ of habeas corpus. In addition, there are numerous other patients, at the hospital and other State mental health facilities, who will shortly be the subject of retention hearings.
The "massive curtailment of liberty” which results from an involuntary commitment (Humphrey v Cady, 405 US 504, 509) mandates that any constitutional questions raised concerning commitment procedures be heard and determined. Both sides *77 have briefed this case fully and now seek a declaration. The court is satisfied that the issues raised in this action bear a likelihood of repetition, typically will evade review, and present significant questions not previously passed upon. The action is therefore not moot (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715; see also, Globe Newspaper Co. v Superior Ct., 457 US 596; Matter of Amato v Ward, 41 NY2d 469).
II
Issues similar to those at bar were raised before the Court of Appeals in 1969 in People v Fuller (24 NY2d 292). In Fuller, the court considered the constitutionality of certain provisions of the Narcotics Control Act of 1966, which permitted a defendant charged with certain offenses to seek civil commitment as a narcotic addict in satisfaction of the criminal charges against him. If after a hearing the defendant was found to be an addict, he could be committed for up to five years. The defendant in Fuller challenged his adjudication, in part on the grounds that statements he made in the course of a prehearing medical examination which were introduced against him at the hearing were taken in the absence of counsel and without benefit of the privilege against self-incrimination.
The Court of Appeals rejected the defendant’s challenge. Reasoning that the program was intended solely to benefit the defendant, the court held that "[i]t is the nonincriminating purpose of the examination that makes the privilege against self incrimination and the right to counsel inoperative at the physical examination” (24 NY2d, at p 302). The court found that since the program was curative, and not punitive, the constitutional guarantees applicable in the ordinary criminal proceeding did not necessarily apply. ”[I]t is not every deprivation of liberty that will bring into play all the constitutional provisions applicable to criminal trials. It is only those curtailments of liberty which serve the traditional purposes of the criminal law which require the full protections of a criminal trial” (24 NY2d, at p 303).
Despite its seeming similarity to the case at bar, the holding in People v Fuller is not controlling. In the first place, the commitment in Fuller was an alternative to incarceration for a defendant who either stood accused of committing a crime or had already been tried and found guilty. Here, the patient *78 is before the court solely as a result of his status as a mentally ill person, and there is no benefit to him from the adjudication in the same sense as there was in Fuller. In this situation the "conviction” and the treatment are one and the same. Second, and more important, subsequent to the decision in Fuller, the Supreme Court made it clear that the applicability of due process requirements to civil proceedings depends not on their quasi-criminal nature, but on the deprivation of liberty that may result (see, Lassiter v Department of Social Servs., 452 US 18, 25; see also, Heryford v Parker, 396 F2d 393). Since the deprivation of liberty inherent in a civil commitment is obvious, the patient is entitled to due process of law (Addington v Texas, 441 US 418). The question is whether in light of "any relevant precedents” and after "assessing the several interests that are at stake” (Lassiter v Department of Social Servs., 452 US, at p 25), due process requires the protections the plaintiffs claim.
hi
The historical privilege against self-incrimination is enshrined in both the US Constitution 5th Amendment and the NY Constitution, article I, § 6. It is well established that the Federal constitutional privilege against self-incrimination applies to the States (see,' Malloy v Hogan, 378 US 1). In the absence of some contrary indication from the Court of Appeals, the identical language of the Federal and State privilege requires that they be construed identically.
By their terms, the constitutional privileges against self-incrimination apply only to criminal proceedings. The Supreme Court held long ago, however, that despite this limitation the privilege is "as broad as the mischief against which it seeks to guard” (Counselman v Hitchcock, 142 US 547, 562). The privilege therefore extends to any situation in which "the government seeks testimony that will subject its giver to criminal liability” (Garner v United States, 424 US 648, 655; Maness v Meyers, 419 US 449; National Labor Relations Bd. v Trans Ocean Export Packing, 473 F2d 612). Any testimony obtained in violation of the privilege is inadmissible in any future criminal prosecution (Lefkowitz v Turley, 414 US 70).
Unquestionably, the privilege against self-incrimination insulates a patient from the use at any subsequent criminal trial of admissions of criminal conduct he may make in the course of his prehearing psychiatric interview (see, Lynch v *79 Baxley, 386 F Supp 378). That, however, is not the issue raised by the plaintiffs. The issue is whether the privilege prevents the hospital from using the patient’s statements, and the medical conclusions drawn therefrom, in support of their application for an involuntary civil commitment.
Because the language of the 5th Amendment privilege against self-incrimination limits the use of a defendant’s statements only in a criminal action, it can have no direct application to a civil proceeding. In In re Gault (387 US 1), however, the Supreme Court held that for purposes of due process analysis a civil commitment proceeding is the equivalent of a criminal prosecution. "[Commitment is a deprivation of liberty. It is incarceration against one’s will, whether it is called 'criminal’ or 'civil.’ And our Constitution guarantees that no person shall be 'compelled’ to be a witness against himself when he is threatened with deprivation of his liberty —a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind’s battle for freedom” (387 US, at p 50). Gault dealt with a proceeding which was essentially criminal in nature, a juvenile deliquency adjudication. However, the principle remains that it is the possibility of deprivation of liberty in any context which brings into play the requirements of due process of law (see, Lassiter v Department of Social Servs., 452 US 18, 25, supra). The Supreme Court has explicitly held that the strictures of due process apply to a civil commitment proceeding (see, Addington v Texas, 441 US 418). The question, therefore, is whether in a civil proceeding for the involuntary commitment of a mentally ill person the privilege against self-incrimination is an essential element of the fundamental fairness that due process requires.
Accepting, as we must under Gault, the proposition that a civil commitment proceeding is the equivalent of a criminal prosecution, the prehearing psychiatric interview serves the same purpose as a criminal interrogation. Essentially, the patient is placed in a situation where he is questioned and asked to make statements which will clearly be "used against him” at the hearing. The interview is also diagnostic in the sense that if the interviewing psychiatrist is convinced that the patient is not in need of further treatment he will undoubtedly so testify at the hearing. A criminal investigator’s interrogation of a subject is "diagnostic” in the same way, however, since his paramount obligation is to obtain a just *80 result, not a conviction (ABA Standards for Criminal Justice, standard 3-1.1 [c]).
Under the facts of this case the court is unwilling to conclude, as did the District Court in Project Release v Prevost (551 F Supp 1298, affd 722 F2d 960), that the primary purpose of the prehearing interview is "diagnosis and the development of treatment goals, not the marshalling of ’incriminating’ evidence” (551 F Supp, at p 1308). Here, the interview is not held until after commitment proceedings have been initiated or the patient has otherwise requested a hearing. In most cases it is held within days, or even hours, of the hearing itself. Its purpose is clearly the gathering of evidence upon which the psychiatrist will base his medical opinion. To say that the interview in these circumstances is not the equivalent of a criminal interrogation would be to exalt the form of the interview over its substance.
As several courts have noted, the application of the privilege against self-incrimination in the context of involuntary commitment proceedings presents unique problems. "A decision as to whether the privilege against self-incrimination may be asserted in civil commitment cases involves conflicting policy considerations. On the one hand, statements coaxed out of a person might lead to indefinite deprivation of his liberty. On the other hand, the determination of and the course of treatment for mental illness are often based to a great extent on the subject’s verbal responses.” (Suzuki v Quisenberry, 411 F Supp 1113, 1130; see also, Gomes v Gaughan, 471 F 2d 794, 799; Lessard v Schmidt, 349 F Supp 1078, 1100-1101, vacated on other grounds and remanded 414 US 473, 421 US 957.) Faced with this dilemma, some courts have held that the privilege applies (see Suzuki v Quisenberry, supra; Lessard v Schmidt, supra) and others have refused to do so (see, Tippett v Maryland, 436 F2d 1153; Project Release v Prevost, 551 F Supp 1298, affd 722 F2d 960, supra; French v Blackburn, 428 F Supp 1351; State ex rel. Hawks v Lazaro, 157 W Va 417, 202 SE2d 109, supra; Commonwealth ex rel. Finken v Roop, 234 Pa Super Ct 155, 339 A2d 764, appeal dismissed 424 US 960).
This court agrees with those courts which have refused to recognize the applicability of the privilege in this context. It is unquestioned that the State is entitled to commit mentally ill persons involuntarily as long as the procedure by which it does so comports with the requirements of due process (see, Addington v Texas, 441 US 418, 426, supra; Matter of Harry M., 96 AD2d 201, supra). Due process does not necessarily *81 require that all of the strictures applicable to a criminal trial apply to a retention hearing (cf. Kent v United States, 383 US 541). Indeed, a retention hearing, dealing solely, as it does, with the state of the subject’s mind, is fundamentally different from a criminal trial or even the juvenile proceeding considered in Gault. This distinction is critical with respect to the privilege against self-incrimination because there is no way to obtain a fair view of the patient’s mental status without a psychiatric interview. As several courts have recognized, such an interview would be frustrated by the availability of the privilege against self-incrimination (see, Tippett v Maryland, supra; French v Blackburn, supra). Furthermore, since the patient’s conversations with his treating physician are privileged (see, CPLR 4504 [a]), if the privilege applies and is asserted, there will be no evidence upon which the hearing court can base its decision, other than the hospital record and the expert’s conclusion therefrom. In these circumstances, the interest of the individual in being free from "incriminating” himself does not predominate, as it does in a criminal case, over the interest of the State, and the patient for that matter, in a just and correct result. Essentially, the privilege against self-incrimination must give way to ensure that the more fundamental right, in this context, to a full and fair hearing is not compromised. The privilege against self-incrimination therefore does not apply to the civil commitment proceedings at issue here.
IV
The right to counsel is like the privilege against self-incrimination in that although it is specifically guaranteed to criminal defendants (US Const 6th Amend; NY Const, art I, § 6), its applicability in noncriminal proceedings depends solely upon the requirements of due process (see, Addington v Texas, 441 US 418, supra; People ex rel. Menechino v Warden, 27 NY2d 376). No one denies, however, that a patient has the right to counsel at proceedings which may result in his involuntary commitment to a mental health institution (see, Heryford v Parker, 396 F2d 393, supra; Doremus v Farrell, 407 F Supp 509; Bell v Wayne County Gen. Hosp., 384 F Supp 1085). The question is whether that right entitles the patient to the presence of counsel at his prehearing psychiatric examination, i.e., has the right to counsel attached at the time of the examination?
In United States v Wade (388 US 218), the Supreme Court *82 held that a pretrial lineup constitutes a "critical stage” of the proceedings at which the defendant was entitled to counsel. The court stated:
"It is central to that principle that in addition to counsel’s presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel’s absence might derogate from the accused’s right to a fair trial * * *
"In sum, the principle of Powell v. Alabama and succeeding cases requires that we scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant’s basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant’s rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice” (388 US, at pp 226-227).
Whether a particular stage in the proceedings is critical, therefore, depends upon its relationship to the trial itself, and the ability of the defendant’s counsel to represent him effectively without having been present at the pretrial confrontation.
Ordinarily, defense counsel will have no opportunity to observe the gathering of evidence by an adverse witness. However, the unique nature of a civil commitment proceeding and the peculiar characteristics of the prehearing examination render that interview a critical stage of the proceedings. The examination is clearly of fundamental importance to the conduct of the hearing which follows. In the first place, the hearing generally consists of the testimony of only one witness, the interviewer. The court’s determination is based upon his testimony plus a review of the hospital record. Second, the interviewer is a peculiar witness, testifying both as to the facts and the expert opinion which is to be drawn therefrom. Furthermore, the client is of little, if any, help in preparing counsel for cross-examination by reconstructing the interview. The ability of counsel to observe the interview would clearly be a substantial factor in obviating the prejudice which results from these circumstances. Moreover, the appearance of regularity and fairness, which is itself a valuable commodity in the administration of justice, would be furthered by allowing counsel this opportunity. The right to counsel surely extends so far.
*83 Those courts which have reached an opposite conclusion have reasoned that the presence of counsel at the interview would be intrusive and that no substantial benefit from counsel’s presence had been proved (see, Project Release v Prevost, 722 F2d 960, supra; Lynch v Baxley, 386 F Supp 378, supra; Lessard v Schmidt, 349 F Supp 1078, supra; State ex rel. Hawks v Lazaro, 157 W Va 417, 202 SE2d 109, supra). Such arguments, however, have twice been rejected by the Court of Appeals in similar contexts. In Matter of Lee v County Ct. (27 NY2d 432), the court held that defense counsel is entitled to attend an examination held pursuant to CPL article 730 to determine the defendant’s fitness to proceed. More recently, in Matter of Alexander L. (60 NY2d 329), the court held that the attorney for a parent in a proceeding to terminate parental rights is entitled to attend the psychiatric examination of his client. The court rejected the argument that the possibility of impairment of the integrity of the interview justified a blanket prohibition on counsel’s presence. The court stated: "Conceivably, in a particular instance there might be cause to conclude that the validity of a psychiatrist’s examination might be compromised by the presence or intrusive conduct of a third person — as, perhaps, the parent’s counsel. In such a circumstance, bearing in mind the regard in which the right to the assistance of counsel is held, the court might nevertheless properly restrict the attorney’s presence despite the parent’s willingness and desire to the contrary. The predicate for such a restriction however may not be the failure of the parent to demonstrate a negative — i.e., the. absence of the prospect of the impairment — but must be a positive showing, usually by the examining expert on the initiative of the petitioner or the court, that there is justification in a particular case for exclusion of the third person or restrictions on his or her conduct during the examination” (60 NY2d, at p 337). There has been no such showing in this case.
Fundamental fairness in these circumstances, however, does not necessarily require the presence of counsel at the prehearing interview. All of the concerns raised by the plaintiffs in their argument for the presence of counsel could be satisfied, even if counsel did not attend, by the preservation of the interview for his review. Indeed, in light of the inapplicability of the privilege against self-incrimination, counsel’s role at the examination would be entirely passive. Therefore, although the court has decided that the right to counsel applies at the prehearing psychiatric interview stage of the *84 proceedings, it is willing to consider the possibility that the patient’s right to counsel can be satisfied by means short of the presence of counsel at the interview.
At this juncture, in the absence of argument by the parties on this point, the court is unwilling to say just what means of preservation would be sufficient to satisfy the right to counsel in these circumstances. It does occur to the court, however, that preserving the interview by means of video tape recording, if feasible, would have several advantages. In the first place, it would be a complete record of the interview, including all of the statements, tone of voice, gestures and other items which go into the making of the expert’s evaluation. The tape would provide the patient’s counsel with a chance to observe the interview as fully as if he were present without any possibility of compromising its integrity. Furthermore, the tape might be admissible into evidence at the hearing for the benefit of the court, and, if so, would obviate the possibility that the patient’s counsel might have to testify at the hearing as to any factual errors in the expert’s testimony, which it is conceivable he could do were he present at the interview.
Since the court is not, however, conversant with all of the possible means of preservation and with the needs and abilities of the hospital and the patient’s counsel, further argument is required before the court can determine whether the patient’s right to counsel can be satisfied by means other than counsel’s presence at the prehearing psychiatric interview.
v
Accordingly, it is the order of this court that the motion and cross motion for summary judgment are disposed of as follows. With respect to the plaintiffs’ request that the court declare that the privilege against self-incrimination attaches at the prehearing psychiatric interview and that plaintiffs may refuse to submit to such examinations, the plaintiffs’ motion is denied and the cross motion is granted. The privilege against self-incrimination does not so apply. With respect to the plaintiffs’ request that the court declare that they have the right to the presence of counsel at the prehearing psychiatric interview, the motion is granted, and the cross motion denied, only to the extent that the court declares that the right to counsel applies at the prehearing psychiatric interview. Determination of whether this right requires that counsel be permitted to attend the interview is held in abeyance pending *85 further argument. The defendants are directed to serve on the plaintiffs and submit, within 60 days of entry of this order, such briefs and documentary evidence on this issue as they deem advisable. The plaintiffs will respond thereto within 20 days thereafter. In the event that either side feels that oral argument is necessary or advisable, they are directed to make such request and the court will consider their application. The entry of judgment declaring the rights of the parties will be held in abeyance pending determination of the issue which remains to be argued.