**Helen Jodie McGUFFIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12891.**

Court of Civil Appeals of Texas, Austin.

Aug. 30, 1978.

Jim Ashby, Fisher & Ashby, Austin, for appellant.

James L. McMurtry, Travis County Atty., Timothy M. Sulak, Asst. County Atty., Austin, for appellee.

PHILLIPS, Chief Justice.

The question for determination is whether the appellant, at a jury trial held on application for her temporary hospitalization, can be called as a witness by the State over the objection of her attorney. The trial court held that she could and we affirm.

An application for temporary hospitalization for appellant was filed on June 1, 1978. On that same day she was committed to the hospital under an order of protective custody. While confined at the hospital she was examined by two psychiatrists who submitted certificates of examination stating that appellant was mentally ill, that she required treatment in a mental hospital and that she was likely to cause injury to herself or to others if not restrained.

On June 13, 1978, a jury trial was held on an application for appellant's temporary hospitalization. At the trial one of the examining psychiatrists testified at length as to her mental condition and her need for confinement in a mental hospital.

Following this testimony the State, out of the jury's presence, indicated its intention to call appellant as an adverse witness, whereupon her attorney objected on the grounds that such procedure would violate her right of due process under the Fifth and Fourteenth Amendments to the United States Constitution. The court overruled the objection, the jury was called back, she took the stand and was interrogated by the State. Some of her responses to the questions of the State's attorney clearly indicated that she was mentally ill.

At the end of appellant's testimony both sides closed and in response to special issues answered by the jury, the court entered its judgment that appellant be committed to a mental hospital.

 The Fifth Amendment to the Constitution of the United States provides that no person shall be compelled in any criminal

case to be a witness against himself, and the Fourteenth Amendment to the United States Constitution provides that the State shall not deprive any person of life, liberty, or property, without due process of law. Fifth Amendment protection applies to the states by virtue of the due process clause in the Fourteenth Amendment in a criminal prosecution. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Appellant maintains that the state has abridged both of these provisions in requiring her to testify at the commitment trial.

We think not. In *State v. Turner*, 556 S.W.2d 563 (Tex.1977), the Supreme Court in distinguishing the standard of proof necessary in a civil commitment case from that in a criminal proceeding found several distinctions. The court found that the involuntary mental patient is entitled to treatment, to periodic and recurrent review of his mental condition, and to release at such time as he no longer presents a danger to himself or others. The mental patient's loss of liberty is, therefore, less severe than that suffered by the convicted criminal. In addition, there is a significant difference between the retrospective assessment of conduct made by a jury in a criminal case, and the determination of future conduct and future need made by a jury in a civil commitment. The court recognized that rules of law are subject to alteration when problems inherent in methods of proof so require, citing *Robinson v. Weaver*, 550 S.W.2d 18 (Tex.1977).

The court also pointed out that the State is required to act as *parens patriae* for the mentally ill, i. e., to exercise its sovereign power of guardianship over persons under disability. *Black's Law Dictionary* 1269 (4th ed. 1968).

 We hold that in its status as *parens patriae* the State is under the duty to ascertain appellant's mental condition at the time of her trial and make a reasonable assessment of what that condition is likely to be in the immediate future. We are not concerned here with punishment or guilt for past conduct and should evidence of some illegal act surface through the interro-

gation in question, appellant's Fifth and Fourteenth Amendment rights against self-incrimination would be applicable. In any event, that question is not before us.

We are not impressed with appellant's contention that, granting for purposes of argument, the State has a right to abridge a person's constitutional right against self-incrimination through the pretrial psychiatric examination, see *Moss v. State*, 539 S.W.2d 936 (Tex.Civ.App.1976, no writ), a lay jury requires expert guidance on the subject of the proposed patient's mental illness and is not qualified to make a determination of that question based solely on its own observations.

*Moss* states that a person suspected of mental illness ought not to be deprived of liberty on the basis of expert opinion alone. Such an expert opinion, although constitutionally required in Texas,[1] is not enough to deprive a person of his liberty. Section 32 of the Texas Mental Health Code requires examination by two physicians, but under §§ 37 and 38, if temporary hospitalization is opposed, the court must hear testimony and make its own findings. Trial by jury is required if demanded by the patient. Tex. Const. art. I, § 15–a; Texas Mental Health Code, art. 5547–36(e) (Vernon's Supp.1978). The jury's own observation of the patient may indeed prove to be valuable evidence of her mental condition.

Nevertheless, as appellant contends, in *Gault*, the Supreme Court of the United States made the statement that under the Fifth and Fourteenth Amendments no person shall be compelled to be a witness against himself when he is threatened with deprivation of his liberty. The Court further stated that this is so whether the proceeding is called "criminal" or "civil."

*Gault* concerned a proceeding to determine whether a minor was a "delinquent" where such a determination could result in commitment to a state institution. A specific question therein was whether, in such a proceeding, an admission by the juvenile may be used against him in the absence of clear and unequivocal evidence that the admission was made with knowledge that he was not obliged to speak and would not be penalized for remaining silent.

*Gault* involved a juvenile's constitutional rights in a criminal matter, whether or not the proceeding was termed "juvenile" or "civil." The Court was concerned with the minor's rights when faced with possible incarceration in an institution, which, when stripped of euphemism, is penal. The Court then scrutinized the procedural aspects of Gault's incarceration with an eye to due process and also compared such process with the safeguards afforded an adult in a criminal proceeding. The Court, however, was careful to state that it did not mean to hold that an adjudication of delinquency must conform to all the requirements of a criminal trial, but merely "that the hearing must measure up to the essentials of due process and fair treatment." 387 U.S. at 30, 87 S.Ct. at 1445, 18 L.Ed.2d at 548 (1967).

The Supreme Court's unwillingness to apply criminal due process requirements inflexibly to all proceedings is demonstrated in *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), where the Court held that due process does not require trial by jury in a juvenile delinquency case. Also in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), a case that involved the application of due process guarantees to proceedings for revocation of parole, the Court reaffirmed previous declarations that due process is flexible and calls for such procedural protection as the particular situation demands, and that a determination of what process is due requires a determination of *the precise nature of the government function involved and the private interest affected.*

Indeed, the Supreme Court of the United States has lately further clarified its broad admonition against self-incrimination stated in *Gault* in *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), where the right to counsel in a court mar-

---

1. See Tex.Const. art. I, § 15–a.

tial proceeding was denied. The Court observed that "even in a civilian context the fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the proceeding is a 'criminal prosecution' for Sixth Amendment purposes."[2] And further, "even in the civilian community a proceeding which may result in deprivation of liberty is nonetheless not a 'criminal proceeding' within the meaning of the Sixth Amendment if there are elements about it which sufficiently distinguish it from a traditional civilian criminal trial." *Id.* at 37–38, 96 S.Ct. at 1289, 47 L.Ed.2d at 566.

We are not concerned here with past guilt, the trustworthiness of a confession, self-incrimination, or for that matter, criminal conduct of any kind such as was the basis for the decision in *Gault.* We are concerned with the State's right under our statutes to have a jury observe the patient to determine her mental health to consider the possibility of treatment and/or the prevention of harm to herself or others.

In balancing the precise nature of the governmental function involved with the private interest affected, we affirm the judgment of the court below.

Affirmed.

2. The Sixth Amendment guarantees to an accused in a criminal prosecution the right to a speedy public trial with additional safeguards on fairness. These include an impartial jury trial in a proper district, confrontation of adverse witnesses, assistance of counsel, compulsory process for obtaining witnesses and the right to be informed of the accusation.