IN THE MATTER OF RICHARD BAKER

Docket No. 51790. Submitted October 19, 1981, at Detroit.—Decided July 12, 1982. Leave to appeal applied for.

A petition for the commitment of Richard Baker was filed by Mary Day. At the commitment hearing in Wayne Probate Court, Baker was called to testify and questioned by the trial judge. He was subsequently committed to a state psychiatric facility. Baker appealed to the Wayne Circuit Court, which affirmed, James Montante, J. Baker appeals by leave granted, alleging that the probate court's requiring him to testify at the commitment proceeding violated his due process rights and privilege not to testify against himself. *Held:*

Because of the differences between criminal proceedings and civil commitment proceedings the Fifth Amendment protections should not be extended to the civil commitment proceeding. An individual does not have the right to refuse to testify at his or her civil commitment hearing.

Affirmed.

M. F. Cavanagh, J., dissented. He would hold that the Fifth Amendment does apply and that an individual should not be compelled to assist the state in succeeding in a civil commitment proceeding which may deprive him of his liberty. He would reverse.

Opinion of the Court

1. Constitutional Law — Mental Health — Commitment Proceeding — Privilege Not to Testify Against Oneself.

An individual alleged to be a mental incompetent does not have the right to refuse to testify at his or her civil commitment proceeding; the Fifth Amendment privilege not to testify against oneself does not apply at such hearings (US Const, Am V).

Reference for Points in Headnotes
[1, 2] 81 Am Jur 2d, Witnesses § 32.

DISSENT BY M. F. CAVANAGH, J.

2. CONSTITUTIONAL LAW — MENTAL HEALTH — COMMITMENT PRO-
      CEEDING — PRIVILEGE NOT TO TESTIFY AGAINST ONESELF.

   The Fifth Amendment privilege not to testify against oneself
      should be extended to a respondent in a civil commitment
      proceeding; he should not be compelled to provide testimonial
      evidence which may result in the deprivation of his liberty (US
      Const, Am V).

*George H. Cross,* Wayne County Corporation
Counsel, and *Caroline A. Carson,* Assistant Corpo-
ration Counsel, for petitioner.

Legal Aid & Defender Association of Detroit (by
*Alan Kellman),* for respondent.

Before: T. M. BURNS, P.J., and M. F. CAVANAGH
and R. A. BENSON,* JJ.

T. M. BURNS, P.J. Respondent appeals, by leave
granted pursuant to an order of this Court on
January 6, 1981, an order of the Wayne County
Circuit Court that affirmed a July 13, 1978, order
of the Wayne County Probate Court committing
respondent to a mental hospital.

According to the stipulated statement of facts,
respondent Baker was called to testify at his July
12 and 13, 1978, commitment hearing over the
objections of his counsel. Upon the stand, respon-
dent was questioned by the trial judge, over his
counsel's objections, pertaining to issues raised in
the commitment proceeding. None of the questions
asked by the trial judge concerned matters that
would have tended to subject respondent to crimi-
nal penalties.

At the close of the commitment hearing, respon-
dent was committed by the trial judge to a state
psychiatric facility for up to 60 days. In affirming

* Circuit judge, sitting on the Court of Appeals by assignment.

the decision and order of the probate judge, the Wayne County Circuit Court ruled that a person subject to a civil commitment case does not have the right to refuse to testify or answer questions that would not tend to subject him to possible criminal penalties. On appeal, respondent raises only a single issue: Did the trial judge violate his rights under the Due Process Clause and the Fifth Amendment by calling him to the stand and, over his objections, forcing him to testify against himself in a proceeding instituted for the purpose of having him committed to a mental facility?

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself". However, the scope of the privilege against self-incrimination is somewhat more comprehensive. As the concurring opinion of Justice White in *Murphy v Waterfront Comm of New York Harbor,* 378 US 52, 94; 84 S Ct 1594; 12 L Ed 2d 678 (1964), notes:

"The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory, * * * *it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used."* (Emphasis added; footnote omitted.)

Traditionally then, the privilege was restricted to instances that might lead to criminal proceedings. In *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967), the Supreme Court examined the due process rights of juveniles charged with being delinquent. It was argued in that case that the privilege against self-incrimination should not apply because juvenile proceedings were civil and not

criminal in nature. The Supreme Court rejected
this argument:

"However, it is also clear that the availability of the
privilege does not turn upon the type of proceeding in
which its protection is invoked, but upon the nature of
the statement or admission and the exposure which it
invites." 387 US 49.

The Court also opined that although juvenile
proceedings were not labeled "criminal", the re-
sults were the same and determinations of delin-
quency could lead to commitment in a state insti-
tution and in some states the same institution in
which adult criminals were kept:

"For this purpose, at least, commitment is a depriva-
tion of liberty. It is incarceration against one's will,
whether it is called 'criminal' or 'civil'. And our Consti-
tution guarantees that no person shall be 'compelled' to
be a witness against himself when he is threatened
with deprivation of his liberty—a command which this
Court has broadly applied and generously implemented
in accordance with the teaching of the history of the
privilege and its great office and mankind's battle for
freedom." 387 US 50. (Footnote omitted.)

Finally, the Court cogently noted that there was
no assurance that an apprehended juvenile would
remain outside of the reach of adult courts as a
consequence of the offense for which he was taken
into custody.

In cases that it has decided subsequent to *Gault,*
the Supreme Court clearly has indicated that it
has not obliterated all distinctions between "civil"
and "criminal" proceedings for purposes of due
process application. In particular, the Supreme
Court held that the quantum of proof needed to
commit an individual involuntarily to a state men-

tal hospital need not equal the criminal standard of beyond a reasonable doubt. *Addington v Texas,* 441 US 418; 99 S Ct 1804; 60 L Ed 2d 323 (1979). We note, however, that the Court also rejected the generally applied civil standard of proof, that of a preponderance of the evidence, and settled on a middle ground of "clear and convincing evidence" as appropriate for civil commitment proceedings.

Significant for our purposes here are the reasons articulated by the Supreme Court in *Addington* for the different standards of proof called for in criminal proceedings as opposed to civil commitment hearings. The Court found that, unlike juvenile delinquency proceedings, "[i]n a civil commitment state power is not exercised in a punitive sense. * * * [A] civil commitment proceeding can in no sense be equated to a civil prosecution". 441 US 428. The Court further enunciated three other distinctions between civil commitment proceedings and criminal proceedings: (1) the risk of erroneous commitment is minimized because of the layers of professional review and concern of family and friends, (2) the release of a genuinely mentally ill person is worse for the individual than failure to convict the guilty, and (3) unlike the inquiry in criminal proceedings, *i.e.,* did the accused commit the criminal act, the inquiry and commitment proceeding are based in large part on psychiatric diagnosis.

Although the United States Supreme Court had an opportunity to address the question of whether an involuntarily committed psychiatric patient had a Fifth Amendment right to refuse to give information to psychiatrists who were participating in his commitment proceeding, it did not do so. *McNeil v Director, Patuxent Institution,* 407 US 245; 92 S Ct 2083; 32 L Ed 2d 719 (1972). Justice

Douglas, however, in his concurring opinion in that case held that the Fifth Amendment's privilege against self-incrimination was applicable to commitment proceedings even though they are nominally labeled "civil" proceedings. 407 US 257.

The law of forums whose jurisdiction and persuasive effect is less than that of the Supreme Court more particularly aids us here. In general, those courts that have addressed the question before us have found that an individual does not have the right to refuse to testify at his or her civil commitment proceeding because the Fifth Amendment privilege against self-incrimination does not apply at such hearings. *People v Taylor,* 618 P2d 1127, 1136 (Colo, 1980), *People v Keith,* 38 Ill 2d 405; 231 NE2d 387 (1967), *In re Field,* 120 NH 206; 412 A2d 1032 (1980), *State v Matthews,* 46 Or App 757; 613 P2d 88 (1980), *McGuffin v State,* 571 SW2d 56 (Tex Civ App, 1978). However, in a minority of jurisdictions, the Fifth Amendment privilege against self-incrimination has been applied in the context of civil commitment proceedings, *Tyars v Finner,* 518 F Supp 502 (CD Cal, 1981), *Suzuki v Quisenberry,* 411 F Supp 1113 (D Hawaii, 1976), *modified sub nom Suzuki v Yuen,* 617 F2d 173 (CA 9, 1980), *Lessard v Schmidt,* 349 F Supp 1078, 1100 (ED Wis, 1972), *vacated on other grounds* 414 US 473; 94 S Ct 713; 38 L Ed 2d 661 (1974), *on remand* 379 F Supp 1376 (ED Wis, 1974), *vacated on other grounds* 421 US 957; 95 S Ct 1943; 44 L Ed 2d 445 (1975), *on remand* 413 F Supp 1318 (ED Wis, 1976) (statements to psychiatrists unless voluntarily given after notice of possible consequences cannot be the basis of an order of commitment), *Haskett v State,* 255 Ind 206; 263 NE2d 529 (1970), *Commonwealth ex rel Finken v Roop,* 234 Pa Super 155; 339 A2d 764 (1975).

After reviewing these authorities, we are convinced that the best analysis of the question before us is set forth in the former cases. The receipt of testimony from the respondent in a commitment hearing can be analogized to the admissibility of physical evidence, as opposed to testimonial evidence, at a criminal trial. Evidence such as handwriting samples, *People v Petrac,* 89 Mich App 188; 280 NW2d 478 (1979), and blood-type specimens, *People v Spencer,* 93 Mich App 605; 286 NW2d 879 (1979), is admissible at criminal trials in this state. In the same sense that it is proper to require a criminal defendant to give a handwriting sample or a blood specimen or to speak certain words or to stand for a viewing of his body, the finder of fact at an incompetency proceeding must be accorded the benefit of hearing the manner and content of the alleged incompetent's responses to questioning. It is only by hearing the respondent's answers to such questioning that the finder of fact may make an informed judgment as to the nature of the mental or psychological disablement, if any, from which he suffers. No witness has the privilege to refuse to reveal to a trier of fact pertinent physical or mental characteristics where they are relevant to issues under consideration.

Affirmed. No costs, a matter of public importance being involved.

R. A. Benson, J., concurred.

M. F. Cavanagh, J. *(dissenting).* I respectfully dissent. The privilege against self-incrimination was one of the rights specifically discussed in the case of *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967). In response to the argument that juvenile proceedings are "civil" and not "criminal" in nature and therefore the privilege against self-

incrimination should not apply, the United States Supreme Court disussed the wording of the Fifth Amendment and stated:

"However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." 387 US 49.

The Court held that although juvenile proceedings were not labelled "criminal", the results were the same. Determination of delinquency could lead to commitment to a state institution and in some states even to an institution in which adult criminals were kept. The Court stated further:

"For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil'. And our Constitution guarantees that no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his liberty—a command which this Court has broadly and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom." Id., 387 US at 50; 87 S Ct at 1455-1456; 18 L Ed 2d at 558-559. (Footnote omitted.)

That same rationale should apply here to preclude an individual from being compelled to assist the state in succeeding in a civil commitment proceeding which deprives him of his liberty. To hold otherwise would fly in the face of the very purpose of the Fifth Amendment to our constitution. The majority's analogy of testimony from a respondent in a commitment hearing to physical evidence admissible in criminal trials is strained at best. Physical evidence is admissible in criminal trials because it relates to the issue of identifica-

tion of the defendant rather than disclosing the defendant's knowledge or state of mind. By contrast, testimonial evidence does disclose knowledge or a present mental state and the Fifth Amendment has always protected a person from being compelled to reveal his mental state when a deprivation of liberty might result. I differ with the majority's statement that "No witness has the privilege to refuse to reveal to a trier of fact pertinent physical or mental characteristics where they are relevant to issues under consideration". In a criminal trial, a defendant is privileged under the Fifth Amendment from being compelled to reveal his mental state even though his *mens rea* is at issue. This same privilege should extend to a respondent in a civil commitment proceeding. In the case of *Tyars v Finner,* 518 F Supp 502 (CD Cal, 1981), the Court stated:

"The California Supreme Court held that petitioner could be 'required to respond to nonincriminatory questioning which may have revealed his mental condition to the jury, whose duty it was to determine whether he was mentally retarded.' *Cramer [v Tyars,* 23 Cal 3d] 139; 151 Cal Rptr 653; 588 P2d 793 [1979]. It analogized the receipt of such evidence to the permissible disclosure of physical as opposed to testimonial evidence. The enforced testimony of petitioner, it held, was not communications or testimony in the sense of disclosing knowledge. *Id.*

"That rationale cannot withstand close scrutiny. In fact, as the California Court itself said *(id.),* such evidence 'may in fact be the most reliable proof and probative indicator of the person's present mental condition.' *That is why it cannot be compelled." Id.,* 509.

I am persuaded that *Tyars, supra,* rests on sound analysis regarding the scope of protection provided by the Fifth Amendment and the policy

reasons for such. I see no good reason for refusing to extend the Fifth Amendment privilege in civil commitment proceedings except for the paternalistic view that the state is really just trying to help the respondent. Even if this were true, I believe that interest to be outweighed by the respondent's fundamental right not to be compelled to provide testimonial evidence which may result in his incarceration. If a respondent is really a danger to himself or the community, the state should be able to prove it through other means.

I would reverse.