OPINION OF THE COURT
Sidney Leviss, J.
The issue presented on this application for a writ of habeas *648 corpus is whether a patient who has been called as a witness by the hospital has the right to invoke the constitutional privilege against self-incrimination and refuse to take the stand.
A collection of some of the divergent opinions on this issue is contained in the recent case of Matter of Goodwin (366 NW2d 809, 813-814) in which the Supreme Court of North Dakota stated:
"Some cases have held or suggested the Fifth Amendment right to not be forced to 'testify’ against yourself applies to mental health incarcerations. See Tyars v. Finner, 518 F.Supp. 502 (C.D.Cal. 1981), rev’d and remanded on other grounds, 709 F.2d 1274, 1276 (9th Cir. 1983); Suzuki v. Quisenherry, 411 F.Supp. 1113 (D.Hawaii 1976), modified sub nom. Suzuki v. Yuen, 617 F.2d 173 (9th Cir. 1980) (fifth amendment privilege against self-incrimination held inapplicable but questioned whether involuntary commitment can be supported by silence alone); Lessard v. Schmidt, 349 F.Supp. 1078, 1100 (E.D.Wis. 1972), vacated on other grounds, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), vacated on other grounds, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975); on remand, 413 F.Supp. 1318 (E.D.Wis. 1976); Haskett v. State, 255 Ind. 206, 263 N.E.2d 529 (1970); Commonwealth ex rel. Finken v. Roop, 234 Pa.Super. 155, 339 A.2d 764 (Pa.Super.Ct. 1975).
"Other cases have held or suggested that the right to remain silent in the face of state incarceration actions does not carry beyond traditional 'criminal’ proceedings to civil mental health commitments. See Matter of Baker, 117 Mich.App. 591, 324 N.W.2d 91 (Mich.Ct.App. 1982) (Cavanagh, J., dissenting). See also People v. Taylor, 618 P.2d 1127, 1137-40 (Colo. 1980); People v. Keith, 38 Ill.2d 405, 231 N.E.2d 387, 390 (1967), Kraemer v. Mental Health Board, 199 Neb. 784, 261 N.W.2d 626 (1978); In re Field, 120 N.H. 206, 412 A.2d 1032, 1034-35 (1980); Matter of Matthews, 46 Or.App. 757, 613 P2d 88 (Or.Ct.App. 1980); McGuffin v. State, 571 S.W.2d 56 (Tex.Civ.App. 1978).
"The United States Supreme Court has not chosen between these views.”
The North Dakota court also avoided determining the specific issue. Petitioner herein relies on Matter of Kenneth M. (130 Misc 2d 217 [Sup Ct, Monroe County]), which was decided subsequently and which came down on the side of permitting *649 the invocation of the US Constitution 5th Amendment privilege in civil retention proceedings.
The statement of privilege in the 5th Amendment which is applicable to the States by reason of the 14th Amendment is that no person shall be compelled in any criminal case to be a witness against himself. Case law, however, establishes that the privilege applies to any type of proceeding, i.e., criminal, civil, administrative, investigatory, "where a witness may reasonably apprehend that his statements could be used in a criminal proceeding or could lead to other evidence which might be so used.” (French v Blackburn, 428 F Supp 1351, 1358, affd 443 US 901.) The opinion in Matter of Kenneth M. (supra) focuses on the liberty interests, taking the position that since involuntary civil commitment constitutes a significant deprivation of liberty, the constitutional privilege against self-incrimination applies. In so doing, it relies principally on In re Gault (387 US 1). In that case involving a civil juvenile delinquency proceeding, the Supreme Court, commenting on the use of the 5th Amendment privilege, stated (pp 49-50): "In the first place, juvenile proceedings to determine 'delinquency,’ which may lead to commitment to a state institution, must be regarded as 'criminal’ for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil’ label-of-convenience which has been attached to juvenile proceedings.” Nothing further in the context that there was no assurance that in over half of the State juveniles would be kept in separate institutions from adult "criminals” and, in fact, might be placed in or transferred to adult penal institutions, the court stated (p 50): "For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one’s will, whether it is called 'criminal’ or 'civil.’ And our Constitution guarantees that no person shall be 'compelled’ to be a witness against himself when he is threatened with deprivation of his liberty — a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind’s battle for freedom.”
It is this latter comment which appears to be the fulcrum of the Matter of Kenneth M. decision (supra). Any attempt, however, to analogize between civil involuntary commitment proceedings and juvenile delinquency proceedings is not compelling in view of the Supreme Court’s decision in Addington v Texas (441 US 418, 427-428), in which the court stated:
*650 "In Winship [397 US 358], against the background of a gradual assimilation of juvenile proceedings into traditional criminal prosecutions, we declined to allow the state’s 'civil labels and good intentions’ to 'obviate the need for criminal due process safeguards in juvenile courts.’ 397 U.S., at 365-366. The Court saw no controlling difference in loss of liberty and stigma between a conviction for an adult and a delinquency adjudication for a juvenile. Winship recognized that the basic issue — whether the individual in fact committed a criminal act — was the same in both proceedings * * *
"There are significant reasons why different standards of proof are called for in civil commitment proceedings as opposed to criminal prosecutions. In a civil commitment state power is not exercised in a punitive sense. Unlike the delinquency proceeding in Winship, a civil commitment proceeding can in no sense be equated to a criminal prosecution. Cf. Woodby v. INS, 385 U.S., at 284-285.” (See, State v Hudson, 121 NH 6, 425 A2d 255, 258; Project Release v Prevost, 722 F2d 960, 972-973.)
Further, "it is not every deprivation of liberty that will bring into play all the constitutional provisions applicable to criminal trials. It is only those curtailments of liberty which serve the traditional purposes of the criminal law which require the full protections of a criminal trial.” (People v Fuller, 24 NY2d 292, 303; see also, French v Blackburn, supra, pp 1358-1359; see, Ughetto v Acrish, 130 Misc 2d 74, 77.) The purpose of civil commitment under the Mental Hygiene Law is unquestionably care and treatment.
Accordingly, this court holds that petitioner may not refuse to take the stand. If, of course, a particular question would implicate petitioner with respect to any criminal activity, petitioner may refuse to answer the specific question. One final note, this determination should not be interpreted as permitting involuntary commitment based solely on the testimony of the patient. "Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists.” (Addington v Texas, supra, p 429.)