*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Contempt OF MICHELLE L. ELOWSKI.

---

MICHELLE L. ELOWSKI,

Appellant.

UNPUBLISHED
May 11, 2026
2:25 PM

No. 370102; 370387
Alpena Probate Court
LC No. 19-016761-TV;
21-017319-DE

---

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

In these consolidated appeals,[1] appellant, Michelle L. Elowski, appeals as of right the trial court orders holding her in contempt. Appellant was an attorney of record in two underlying cases—with the same presiding judge—that involved the distribution of two separate trusts. The underlying case in Docket No. 370102 involved the distribution of the "Harrison Trust," and the underlying case in Docket No. 370387 involved the distribution of the "Mausolf Trust." In total, appellant was held in contempt three times. Once in the Harrison case for leaving a hearing abruptly,[2] once in the Harrison case for failing to follow a court order and transfer money, and once in the Mausolf case for failing to follow a court order and provide an accounting. Appellant now appeals from both the Harrison case and the Mausolf case, but her arguments on appeal deal primarily with the findings of contempt in the Harrison case. We affirm.

## I. FACTS

---

[1] *In re Contempt of Michelle L Elowski*, unpublished order of the Court of Appeals, entered May 6, 2024 (Docket Nos. 370102; 370387).

[2] Pertinently, for this finding of contempt, appellant was sentenced to 93 days in jail, with 48 days held in abeyance.

-1-

The facts relevant to these appeals began after the trial court ordered appellant to provide certain accountings and transfers in each case.

Regarding the Harrison case, in September 2023, the trial court ordered appellant to "transfer any and all monies and/or assets belonging to the [Harrison] Trust, or that should belong to the [Harrison] Trust, to the special fiduciary no later than 4:00 p.m. on October 5, 2023." On October 4, 2023, appellant requested a stay of proceedings in the Harrison case to appeal the trial court's order removing appellant as the trustee and appointing a special fiduciary.[3] On October 6, 2023, the Harrison Estate requested that the trial court hold appellant in civil contempt, alleging that appellant failed to comply with the September 2023 order and that appellant's firm continued to hold $270,908.36 that belonged to the Harrison Trust.

Regarding the Mausolf case, in September 2023, the trial court ordered appellant to prepare and submit accountings for the Mausolf Trust within 14 days, and "remit all remaining funds for the Estate within 7 days." On October 24, 2023, the Mausolf Estate requested that the trial court hold appellant in civil contempt, alleging that appellant failed to comply with the September 2023 order.

On November 3, 2023, the trial court held a hearing—to which appellant appeared by Zoom—to address the outstanding motions in the Harrison case, including the Harrison Estate's show cause motion and appellant's motion to stay proceedings. At the beginning of the hearing, the trial court stated that it had received a text message from appellant stating that she was not going to be able to attend the hearing; the trial court reprimanded appellant, noting that it was not appropriate to communicate with the court through text message regarding pending cases.

Nevertheless, appellant stated that a change in medication had caused her to become ill, and she could not proceed with the hearing. The trial court asked appellant what the "issue" was because, at that time, she appeared to be lucid, competent, and able to articulate her thoughts. Appellant explained that she was able to appear lucid because she had her e-mail in front of her to read from. She then stated that she was going to "stand mute" because she was "not able to do this today." The trial court noted that it was "somewhat troubling" that appellant had made a similar request in the past and that appellant's current request occurred 15 minutes before the hearing, at which appellant did not appear to be having an adverse reaction but instead appeared "competent and lucid." Appellant stated that she was "getting sick every 15 minutes" and that she was "very under the influence at the moment." She then stated, "I'm sorry that you can't see that . . . . I'm done with this on the record. I don't believe I need to continue to disclose my medical information on the record." She told the court that she would get medical documentation. The court asked if appellant had a time frame in which she believed that she would be able to practice law, and appellant stated that it would take "a couple of days" for her to adjust to her new medication. The following exchange then occurred:

---

[3] This Court affirmed the trial court's order. See *In re Trueman Harrison and Modesta Harrison Trust*, unpublished per curiam opinion of the Court of Appeals, issued January 22, 2025 (Docket No. 368031), pp 8-9.

[*Opposing Counsel*]: [H]ere's what's unbelievable to me, your Honor. And I'm just going to be frank, real quick—

[*Appellant*]: I—I don't—

[*Opposing Counsel*]: —I understand that Ms.—

[*Appellant*]: Do what you need to do.

[*Opposing Counsel*]: —I understand that [appellant] –

*The Court*: Hold—hold on.

*Court Clerk*: She's gone.[4]

Thereafter, the court ordered recess to decided how it "want[ed] to come back and proceed now that [appellant had] opted to end the hearing."

After the recess ended, the trial court found appellant in direct criminal contempt as follows:

So, first the Court is going to find [appellant] in direct contempt today for her conduct. That conduct being, voluntarily and just simply stating, to the effect of, "the Court can do what it wants" and hung up from Zoom. The Court views that in the same manner as if [appellant] was here in the Courtroom and she chose just to simply get up, walk out of the court and slam the door shut. And so, looking at direct contempt. Direct contempt is that, that occur in the Court's presence may be immediately adjudged and sanctioned summarily . . . . Punishment for contempt is appropriate when it is required to restore order in the courtroom and to ensure respect for the judicial process. And that's exactly what we have here. Is there needs to be restore to the order of the courtroom and some form of respect. You can't just simply state to a court, as a lawyer, that do what you want. And then, effectively, slam the door and walk out . . . . [The court finds] her in direct criminal contempt. And for there to be a—a appropriate punishment, we will have to have a sentencing. And that's what the Court[']s going to do. Is going to set a sentencing date for [appellant] regarding the direct contempt. It is one in which the Court has knowledge of all the necessary facts. The facts occurred in front of the Court . . . . [Appellant] chose to terminate the hearing. She wasn't released. The Court hadn't even ruled on her motion to adjourn. The Court was in the process of trying to find out how much time [appellant] may need, because she indicated she was under the influence and could not adequately represent herself. She began to get more and

---

[4] Appellant later claimed that she abruptly ended the Zoom call so that she "could physically vomit."

more upset at the Court['] s inquiry. And ultimately, resulted in her deciding to terminate her hearing.

On November 6, 2023, the trial court entered an order reiterating its factual findings and stating that "due to [appellant] vacating the court hearing, she was unable to be summarily sentenced. Sentencing will be scheduled at a later date."

On November 28, 2023, appellant moved to adjourn the upcoming hearings in the Mausolf and Harrison cases, arguing that it was clear that the trial court did not "believe the medical issue and disability that counsel is suffering from [was] serious enough to impact her ability to practice law."

On November 29, 2023, the trial court entered an order indicating that on December 1, 2023, it would sentence appellant for her direct contempt in the Harrison case. The trial court stated that it had received a letter from a nurse practitioner, "indicating that [appellant] must have at least a 21-day medical exemption[5] from work due to her current medical condition and prescribed medications." The trial court ordered appellant to appear in person for her sentencing and requested that she have her medical provider available by Zoom to testify under oath about the contents of the letter.

On November 30, 2023, appellant moved to disqualify the trial court judge in both cases, alleging that he was biased against her. She argued that, even though much of the "actual bias and prejudice" occurred in the Harrison case, the trial court was "intentionally attempting to set the stage to have [her] held in contempt of Court again by failing to appear on a matter on December 1, 2023, even though it has been shown she cannot medically appear for this hearing."

Also on November 30, 2023, the trial court granted appellant's motions to adjourn matters in both cases until December 22, 2023, noting that: (1) the nurse practitioner letter that it had received was neither notarized nor directed to the court, and (2) "while unable to practice law," appellant filed a 16-page motion to disqualify the trial court judge—with the utilization of her "sister counsel"—"instead of simply providing documentation as to the location of the Trust funds." On December 19, 2023, the trial court denied appellant's motions to disqualify in both cases, reasoning that appellant's "claims of abuse and ill-treatment are simply not true and are not supported by the record."

On December 21, 2023, appellant requested a de novo hearing and expansion of the record regarding the trial court's decision on her motions to disqualify.

At the December 22, 2023 hearing, the trial court consolidated the three issues of contempt between the Harrison and Mausolf cases.[6] The trial court stayed the sentencing of appellant's

---

[5] This letter was dated November 3, 2023.

[6] To clarify, the three issues of contempt were as follows: (1) the Harrison Estate had moved for appellant to show cause why she should not be held in contempt for not turning over money that belonged to the Harrison Estate, (2) appellant had been held in direct contempt for abruptly leaving

November 3, 2023 direct contempt so that the disqualification matter could be reviewed by a different judge as required by MCR 2.003(D)(3)(a), but it stated that it would otherwise continue on with the resolution of the Mausolf Estate's and Harrison Estate's motions to show cause. Appellant then requested a stay of all proceedings pending a decision by the chief judge regarding the motion to disqualify. The trial court noted the delay in this case and that appellant was present "with the ability to practice law without having a medical issue." Appellant clarified that she was present with a medical issue—she asked the trial court if the hearing could be paused so that she could return to her office and appear via Zoom, which the trial court allowed.

Once the hearing resumed, the trial court heard testimony from appellant and the personal representative of the Mausolf Estate. The trial court found appellant in indirect civil contempt in the Mausolf case, stating that there was clear and unequivocal evidence that appellant had not provided any accountings nor remitted any funds to the Mausolf Estate. The trial court further stated that had the disqualification matter not been pending a de novo review, appellant would have been imprisoned as a coercive civil contempt remedy. The court informed appellant that she could "purge" the contempt by filing the accountings and turning over the Mausolf-Estate funds, but that if the trial court's disqualification decision was affirmed, and appellant had still not purged her contempt, a bench warrant would be issued for her arrest.

The trial court then began the proceedings for Harrison Estate's show cause motion. Appellant admitted that she was in contempt with the trial court's order to transfer the Harrison-Trust assets to the special fiduciary. Appellant testified that on or about December 23, 2020, a check for $295,908.36 was issued from the Harrison Trust to appellant's Interest on Lawyers' Trust Account (IOLTA), and on February 6, 2023, appellant sent a check for $25,000 to the Harrison Estate. Therefore, $270,908.36 in Harrison-Trust funds was currently outstanding. Appellant testified that this sum was not in her IOLTA account but was in her possession in the form of cash. At the end of the hearing, the trial court found by clear and unequivocal evidence that appellant was in contempt. The trial court stated that this case was "absolutely ripe for coercive civil sanctions" because appellant admitted that she had cash on hand, yet she refused to comply with the order to transfer the funds. Again, the trial court stated that had the disqualification matter not been pending a de novo review, appellant would have been imprisoned as a coercive civil contempt remedy. The court informed appellant that she could "purge" the contempt by turning over the outstanding Harrison-Estate funds, but that if the trial court's disqualification decision was affirmed, and appellant had still not purged her contempt, a bench warrant would be issued for her arrest.

On January 5, 2024, Judge K. Edward Black entered a written order following de novo review of appellant's motion for disqualification, stating that there was no evidence of bias and that appellant's claims supporting disqualification were "without merit." Judge Black noted that: (1) appellant "sought an adjournment or stay of the proceedings on every occasion," and (2) the trial court "acted out of an abundance of restraint," providing appellant "more than ample

_____

the November 3, 2023 hearing in the Harrison case, and (3) the Mausolf Estate had moved for appellant to show cause why she should not be held in contempt for not turning over property that belonged to the Mausolf Estate.

opportunity to provide documentation concerning the trust assets and has adjourned numerous hearings."

Thereafter, on January 8, 2024, a bench warrant was issued for appellant's arrest as she had still not provided the money and accountings to the Harrison and Mausolf Estates. On February 3, 2024, appellant was arrested. On February 12, 2023, the trial court held a hearing regarding appellant's ability to comply with the court's orders. Appellant testified that she did not have any of the outstanding funds in either case. The trial court determined that the coercive civil contempt sanction of jail was no longer appropriate because appellant did not have the present ability to comply with the trial court's orders. The trial court scheduled another hearing and instructed appellant to be prepared to show where the outstanding funds had gone.

On March 11, 2024, the trial court held a hearing regarding the indirect and direct contempt proceedings in the Harrison case.[7]

Regarding the direct contempt proceedings, appellant argued that, pursuant to MCL 600.1711 and *In re Contempt of Scharg*, 207 Mich App 438; 525 NW2d 479 (1994), any further hearing on the direct-contempt sentencing matter needed to be conducted by another judge because the trial court did not sentence appellant at the time that it found her in direct contempt. The trial court rejected that argument, stating that appellant caused the delay in sentencing—because she left the Zoom call early, the trial court could not sentence her summarily. The trial court explained that any other delay was "to ensure that [appellant's] due process rights had been adhered to." Appellant presented evidence indicating that she had picked up new medication the morning of November 3, 2023, before the hearing took place. The trial court did not find the evidence regarding appellant's medication or medical providers credible.

Regarding the indirect contempt proceedings, appellant initially asserted her Fifth Amendment right to remain silent as to where the outstanding funds had gone, but she ultimately admitted that the funds were improperly used to "assist with office expenses."

Thereafter, the trial court sentenced appellant to 93 days in jail, with 48 days held in abeyance.[8] The trial court explained that the 48-day sentence would not be imposed if, prior to turning herself in a week later, appellant submitted a letter to the court indicating that her other case files were properly transferred.

Later that same day, on March 11, 2024, the trial court also held a hearing regarding the indirect contempt proceedings in the Mausolf case.[9] At the outset, the trial court took judicial

---

[7] Appellant was represented by counsel at this hearing.

[8] The trial court's judgment of contempt order listed appellant's sentence as 45 days in jail; however, at the March 11, 2024 hearing, the trial court very clearly ordered that appellant was to serve 93 days in jail, with 48 days held in abeyance. Accordingly, the trial court's judgment of contempt order only appears to reflect appellant's sentence if she were to follow the court's orders and not be subjected to the additional 48 days in jail.

[9] Appellant was represented by counsel at this hearing.

notice of appellant's testimony in the Harrison case. Appellant further testified that the outstanding Mausolf funds also "went into [her] business" and that the trustees authorized her to take the money and use it for her business. The trial court ordered that before appellant surrender herself to jail for the Harrison contempt, she needed to "produce approximately 900 pages of text messages from her former client to her regarding the estate funds," and "begin the process of obtaining the financial documents that show the transfer of estate funds from her IOLTA account to her business account and then the distribution of those funds from her business account."

Appellant now appeals.

## II. CONTEMPT

On appeal, appellant raises several issues concerning the trial court's contempt proceedings and findings. We address each issue in turn.

### A. PRESERVATION AND STANDARD OF REVIEW

Because appellant raised these issues in the trial court, they are preserved for appellate review. See *In re Contempt of Tauber*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371447); slip op at 8. "A trial court's decision regarding contempt is reviewed for an abuse of discretion." *In re Contempt of Murphy*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165666); slip op at 4. "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Tauber*, ___ Mich App at ___; slip op at 12. "Questions of law related to contempt are reviewed de novo." *Murphy*, ___ Mich at ___; slip op at 4. "The trial court's factual findings are reviewed for clear error." *DeGeorge v Warheit*, 276 Mich App 587, 590; 741 NW2d 384 (2007). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). We must affirm if there was competent evidence to support the trial court's factual findings in a contempt proceeding. *In re JCB*, 336 Mich App 736, 747-748; 971 NW2d 705 (2021).

### B. DIRECT CONTEMPT FINDING

Appellant first argues that the trial court abused its discretion by finding her in direct contempt on November 3, 2023. We disagree.

"Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *Murphy*, ___ Mich at ___; slip op at 4. "Michigan courts have an inherent, common-law authority to punish contempt of court." *Id.* "This inherent power is essential to the administration of the law because contempt proceedings serve to vindicate the power and authority of the court." *Id.* (quotation marks and citations omitted).

MCL 600.1701 governs the courts' power to address neglect or misconduct, including contempt, and pertinently states:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:

(a) Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority.

\* \* \*

(g) Parties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court.

MCL 600.1711 outlines the types of contempt and punishment, stating:

(1) When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both.

(2) When any contempt is committed other than in the immediate view and presence of the court, the court may punish it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend.

"Punishment for contempt may be a fine of not more than $7,500 or imprisonment not to exceed 93 days or both." *Tauber*, ___ Mich App at ___ ; slip op at 9; see MCL 600.1715(1).

"The power to hold a party, attorney, or other person in contempt is the ultimate sanction the trial court has within its arsenal." *Tauber*, ___ Mich App at ___ ; slip op at 9 (quotation marks and citation omitted). "[T]he primary purpose of the contempt power is to preserve the effectiveness and sustain the power of the courts." *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 708; 624 NW2d 443 (2000). "Because the power to hold a party in contempt is so great, it carries with it the equally great responsibility to apply it judiciously and only when the contempt is clearly and unequivocally shown." *Id.* (quotation marks and citation omitted). "The elements necessary to support a conviction of criminal contempt are (1) a willful disregard or disobedience of the order of the court, and (2) that the contempt is clearly and unequivocally shown." *Tauber*, ___ Mich App at ___ ; slip op at 9 (quotation marks and citation omitted). "A willful disregard consists of an act, omission, or statement tending to impair the authority or impede the functioning of the court." *Id.* (quotation marks and citation omitted). "Criminal contempt must be proven beyond a reasonable doubt." *Id*. "A defendant charged with contempt is entitled to be informed of the nature of the charge against him or her and to be given adequate opportunity to prepare a defense and to secure the assistance of counsel." *Id*. (quotation marks and citation omitted).

But, as noted, MCL 600.1711(1) states that "[w]hen any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both." Accordingly, "[t]o have a valid summary conviction, due process requires that the salient facts constituting the contempt be within the personal knowledge of the judge." *Tauber*, ___ Mich App at ___ ; slip op at 10 (quotation marks and citation omitted). Therefore, "[w]here the contempt is committed directly under the eye or within the view of the court, it may proceed upon its own knowledge of the facts and punish the offender, without further proof, and

without issue or trial in any form." *Id*. (quotation marks and citation omitted). This Court has previously held that a contumacious act that occurs during a court's Zoom hearing satisfies the "immediate view and presence" requirement of MCL 600.1711(1)'s plain language. *See id*. at ___; slip op at 10-11 ("The fact that the trial court conducted the hearing over Zoom instead of physically in the courtroom does not preclude a finding that misconduct or insolent behavior by an attorney constitutes contempt when it nonetheless occurs over video in the immediate view and presence of the court.").

In this case, the trial court held appellant in direct contempt following her conduct during the November 3, 2023 hearing that appellant attended via Zoom. During that hearing, which was itself directed at resolving the Harrison Estate's show cause motion for civil contempt, appellant was admonished by the trial court for both issuing an ex parte communication to the court regarding her medical issues and for appearing via Zoom. Appellant repeatedly asserted that she could not adequately represent herself or her client because of medical issues that she was experiencing. Regardless, the hearing progressed, and appellant was evidently capable enough to argue against opposing counsel's statements regarding her communications with him. Indeed, the trial court even remarked how "lucid and competent" appellant appeared because she was "able to articulate how" opposing counsel was incorrect regarding the timeline of events before the hearing. Moreover, the trial court highlighted that this was the second time that appellant had requested an adjournment because of a medical issue, which was previously denied. After further discussion, appellant stated, "Do what you need to do," and logged off the Zoom hearing. The trial court found appellant in direct contempt for exiting the Zoom call prematurely and without permission.

Because of appellant's actions, the trial court was unable to render a decision on the Harrison Estate's show cause motion for civil contempt or petition to surcharge fiduciary. Additionally, appellant essentially prejudiced herself, and her client, by exiting the hearing before the trial court was able to fully discuss her motion to adjourn. As the trial court stated, it had been "in the process of trying to find how much time [appellant] may need, because she indicated she was under the influence and could not adequately represent herself."

The record supports the trial court's finding of direct criminal contempt. Because these acts occurred in "the immediate view and presence" of the trial court, it was allowed to proceed by summarily finding that appellant was in direct criminal contempt without further proceedings. *See id*. at ___; slip op at 10. Therefore, appellant's arguments that the trial court was obligated to meet additional due process requirements—such as requiring an additional hearing to allow appellant to present more evidence or requiring the court to issue its contempt finding with her present—are unpersuasive.

Additionally, the trial court's rejection of appellant's explanation for her conduct was not erroneous. A "trial court's factual findings in a contempt proceeding are reviewed for clear error, and we must affirm if there is competent evidence to support them." *In re JCB*, 336 Mich App at 748. Moreover, "[w]e do not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Id*.

As the trial court stated on the record, appellant was sufficiently capable of refuting opposing counsel's description of her communications and did not appear to be suffering any adverse effects from a purported change in medication. The trial court also stated in the order

following the hearing that appellant provided no medical documentation from her doctor before the November 3, 2023 hearing began. Even when that documentation was received, the trial court found it to be inadequate because the included documents were neither notarized nor directly addressed to the court. In sum, there was competent evidence to support the trial court's factual findings, and the trial court did not abuse its discretion by finding appellant in direct contempt for her behavior at the November 3, 2023 hearing.

## C. DIRECT CONTEMPT SENTENCING

Appellant further argues that because the trial court deferred her direct contempt sentencing for several months, she was entitled to have a different judge consider her charges. We disagree.

Appellant relies on *In re Contempt of Scharg*, 207 Mich App 438, 440; 525 NW2d 479 (1994), for the proposition that "in every case where a judge defers consideration of a contempt citation until after the conclusion of the trial[,] the charges must be considered and heard before another judge." (Quotation marks and citation omitted.) We find this argument unpersuasive as the trial court did not defer appellant's direct contempt sentencing until the conclusion of a trial in this case. Instead, the trial court had no choice but to defer contempt sentencing because appellant removed herself from the Zoom call and then proceeded to file multiple motions that the trial court cautiously, and appropriately, resolved first.

As stated above, "[w]hen any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both." MCL 600.1711(1). In this case, appellant's direct contempt occurred in the trial court's presence during a Zoom hearing on November 3, 2023; however, the trial court stated that "due to [appellant] vacating the court hearing, she was unable to be summarily sentenced." For the reasons explained below, the trial court ultimately deferred sentencing until March 2024.

In *Tauber*, ___ Mich App at ___ ; slip op at 4, 11-12, the appellant was held in criminal contempt after directing a gender-based slur at the trial judge immediately before his Zoom hearing call disconnected. Like the trial court in this case, the trial court in *Tauber* had no choice but to defer contempt sentencing because the appellant was no longer physically, or virtually, present. On appeal, the appellant argued, *inter alia*, that the trail court: (1) did not "summarily" address his direct criminal contempt because it scheduled a sentencing hearing a week after the appellant's contumacious act, and (2) failed to refer the contempt proceedings to a different judge. *Id*. at ___ ; slip op at 4, 7, 11-12. This Court rejected the appellant's argument, reasoning as follows:

In *Sacher v United States*, 343 US 1, 9; 72 S Ct 451; 96 L Ed 717 (1952), the United State Supreme Court examined the use of the term "summary" as applied to the equivalent federal contempt court rule of procedure, Fed R Civ P 42(b). It determined that "summary" "does not refer to the timing of the action with reference to the offense but refers to a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial. The purpose of that procedure is to inform the court of events not within its own knowledge. The Rule allows summary procedure only as

to offenses within the knowledge of the judge because they occurred in his presence." Indeed, because appellant had disconnected from the Zoom hearing, the trial court issued its show cause order containing the finding that appellant committed criminal contempt. Nonetheless, the trial court's show cause order also scheduled a hearing to determine the appropriate punishment and to reacquire appellant's presence before the court. At this hearing, appellant was given the opportunity to be heard. In light of *Sacher*, we do not review this one-week delay as converting a direct summary proceeding to an indirect, nonsummary proceeding, see MCL 600.1711(2) (addressing contempt that does not occur in the immediate view and presence of the court and requiring proofs and an opportunity to defend). [*Id*. at ___ ; slip op at 12 n 2.]

This Court further noted that "[t]he plain language of MCL 600.1711 uses the term 'summarily' and it does not require 'immediate' imposition of the fine or imprisonment." *Id*. at ___ ; slip op at 12.

In this case, appellant engaged in a course of contumacious conduct long before the November 3, 2023 hearing took place. For example, one of the stated purposes of the November 3, 2023 hearing was to address the Harrison Estate's show cause motion, alleging that appellant failed to transfer all trust funds as previously ordered. The Mausolf Estate had also filed a show cause motion, alleging that appellant failed to prepare and submit accountings for the trust and remit all remaining funds for the Estate as previously ordered. Additionally, the trial court was required to handle multiple, largely duplicative, motions to adjourn or motions contesting preexisting orders filed by appellant that delayed resolution in both files.

Despite appellant's arguments to the contrary, the trial court exercised maximum judicial restraint by acting to protect her due-process rights throughout the contempt proceedings in this case. Beginning as soon as the initial order following the November 3, 2023 hearing, the trial court stated that it could not summarily sentence appellant because she left the Zoom hearing. On November 29, 2023, appellant filed identical motions to adjourn in both cases due to her medical issues. The trial court granted these motions the next day, stating that sentencing for appellant's direct contempt was adjourned until December 22, 2023. On November 30, 2023, appellant filed identical motions to disqualify the trial court judge in both cases. On December 19, 2023, the trial court denied these motions. Nonetheless, on December 21, 2023, appellant submitted a written request for de novo review of the trial court's decision to deny her motions to disqualify. In light of this request, which the trial court granted, the trial court did not sentence appellant's direct contempt during the December 22, 2023 hearing and instead stated that the issue would be addressed after the de novo review had occurred.

On January 5, 2024, Judge K. Edward Black entered a written order following de novo review of appellant's motion for disqualification, stating that there was no evidence of bias and that appellant's claims supporting disqualification were "without merit." Judge Black noted that: (1) appellant "sought an adjournment or stay of the proceedings on every occasion," and (2) the trial court "acted out of an abundance of restraint," providing appellant "more than ample opportunity to provide documentation concerning the trust assets and has adjourned numerous hearings."

-11-

A notice indicates that appellant was to be sentenced on the direct contempt at the next hearing scheduled for February 5, 2024; however, appellant was subsequently jailed as she had already been found in indirect civil contempt twice and had failed to purge the contempt in either case. Thereafter, a bench warrant was issued for appellant's arrest as she had still not provided the money and accountings to the Harrison and Mausolf Estates. On February 12, 2024, the trial court held a hearing regarding appellant's ability to comply with the court's orders. Appellant testified that she did not have any of the outstanding funds in either case. The trial court determined that the coercive sanction of jail was no longer appropriate because appellant did not have the present ability to comply with the trial court's orders. The trial court scheduled another hearing and instructed appellant to be prepared to show where the outstanding funds had gone.

Accordingly, on March 11, 2024, the trial court held two hearings regarding appellant's indirect and direct contempt findings. Regarding her direct contempt, the trial court sentenced appellant to 93 days in jail with 48 days held in abeyance. The trial court explained that the 48-day sentence would not be imposed if, prior to turning herself in a week later, appellant submitted a letter to the court indicating that her other case files were properly transferred.

Considering these facts—i.e., that appellant removed herself from the Zoom call and then proceeded to file multiple motions that the trial court cautiously, and appropriately, resolved first— the trial court had no choice but to defer the contempt sentencing for as long as it did in this case. The trial court afforded appellant extraordinary due process because she had four months to prepare for the eventual contempt sentencing hearing as well as an opportunity to directly challenge the trial court's decisions through her motion to disqualify the trial court judge. Because any delays were caused by appellant, and not the trial court, appellant was not entitled to have a sentencing hearing before a different judge in this case. Compare *Scharg*, 207 Mich App at 439-440, with *Tauber*, ___ Mich App at ___ ; slip op at 7-12.

## D. FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

Appellant further argues that the trial court erred by forcing her to waive her Fifth Amendment right and privilege against self-incrimination at the March 11, 2024 Harrison proceeding. We agree, but we do not believe that reversal is warranted on this ground.

In general, both the United States and Michigan Constitutions provide that no person "shall be compelled in any criminal case to be a witness against himself . . . ." US Const, Am V; Const 1963, art 1, § 17. This privilege against self-incrimination entitles a witness to refuse to answer any question "which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used." *In re Baker*, 117 Mich App 591, 593; 324 NW2d 91 (1982) (quotation marks, citation, and emphasis omitted). "The privilege can be claimed in *any proceeding*, be it criminal or civil, administrative or judicial, investigatory or adjudicatory." *People v Ferency*, 133 Mich App 526, 533; 351 NW2d 225 (1984) (quotation marks and citation omitted). This Court has recognized "two interrelated requirements for a Fifth Amendment violation: compulsion, i.e., evidence that a person is unable to remain silent unless he chooses to speak in the unfettered exercise of his own will, [and] that is grounded on a penalty exacted for a refusal to testify." *In re Blakeman*, 326 Mich App 318, 333-334; 926 NW2d 326 (2018) (quotation marks and citation omitted).

At the March 11, 2024 Harrison proceeding, appellant stated that she would be asserting her Fifth Amendment right to remain silent as to where the outstanding Harrison-Estate funds had gone.[10]  The trial court questioned whether it could "find her in direct contempt for that" as the issue at hand was a civil matter and appellant had been ordered to give an explanation.  The trial court stated that it was leaning toward finding appellant in direct contempt because it believed that appellant was "delaying the inevitable," and that her refusal to explain where the money was by invoking the Fifth Amendment was "as flagrant of a disregard for a civil proceeding as you can possibly get to."  The trial court stated that it could issue a 93-day term of imprisonment against appellant as a sanction.  Appellant argued that a criminal contempt proceeding would need to be initiated first and that it was "fundamentally contrary to the law to put someone in jail for invoking their constitutional right against self-incrimination."  The trial court disagreed, characterizing appellant's conduct as "running games on the system" and causing disorder in the courtroom by delaying the proceedings.

Appellant requested a recess to confer with her counsel.  After the recess, appellant agreed to testify and was sworn in.  Appellant testified that she did not know how she dissipated the outstanding Harrison-Trust funds.  The trial court continued to ask appellant where the money was, and appellant continued to not answer the question directly.  Appellant's counsel again raised concerns regarding appellant's Fifth Amendment rights.  Thereafter, the following exchange occurred:

> [*The Trial Court*]:  Did you steal the money, [appellant]?
>
> [*Appellant*]:  I wouldn't say that that's what happened.
>
> [*The Trial Court*]:  Did you take money that didn't belong to you and use [it] for a purpose for yourself?
>
> * * *
>
> [*Appellant*]:  Your Honor, I think funds were probably used in an improper way.  Yes.

When asked to specify how the money was used improperly, appellant answered that she used the money to "assist with office expenses."  On cross-examination, appellant agreed that she used approximately $249,000 for her law firm's benefit.

Appellant reasonably believed that this testimony could incriminate her.  See *In re Baker*, 117 Mich at 593.  Accordingly, appellant repeatedly asserted her Fifth Amendment right and only

---

[10] As a reminder, this hearing was held after appellant had already testified that she did not have any of the outstanding funds in either case, and when this hearing was scheduled, appellant was instructed to be prepared to show *where* the outstanding funds had gone.

chose to testify after the trial court stated that it could hold her in direct contempt and issue a 93-day term of imprisonment if she did not. Therefore, we agree that appellant's Fifth Amendment rights were violated. See *In re Blakeman*, 326 Mich App at 333-334.

It is important to note that after the March 11, 2024 Harrison proceeding ended, the trial court immediately held a hearing regarding the indirect contempt proceedings in the Mausolf case.[11] At the outset, the trial court took judicial notice of appellant's testimony in the Harrison case, and without any further mention of her Fifth Amendment rights, appellant testified that the outstanding Mausolf funds also "went into [her] business." Considering that there was no break in these proceedings, we conclude that appellant's Fifth Amendment objection remained and that she only chose to testify further because she feared that the trial court would carry out its threat of direct contempt and imprisonment if she did not. See *id*.

On appeal, appellant asks that "all information obtained via questioning at the hearing on March 11, 2024, be stricken from the record and an order enter preventing the use of this information in any type of future proceedings due to the Court's violation of the Appellant's constitutional rights." Although we may "permit amendments, corrections, or additions to the transcript or record," MCR 7.216(A)(4), we believe that appellant's request to prevent the use of her March 11, 2024 statements would be more appropriately raised in any subsequent case where an opposing party tries to admit them as evidence.[12] Notably, in LC No. 2024-0000001954-FH, appellant has since pleaded no contest to embezzlement and was sentenced to jail for eight months as well as ordered to pay $68,500 in restitution—it is unclear: (1) whether this criminal charge was related to the embezzlement of client funds in these cases, and (2) who appellant was ordered to pay restitution to.[13] Appellant has also since been enjoined from practicing law in Michigan.[14] We have no way of telling if these statements were used in appellant's criminal case, and even if so, to what extent the statements constituted cumulative evidence. Accordingly, we decline to grant the broad relief that appellant asks for in this regard.

---

[11] In fact, the transcripts note that the Harrison proceeding concluded at 10:49 a.m., and the Mausolf proceeding began at 10:48 a.m.

[12] As it pertained to a civil proceeding, when appellant invoked her Fifth Amendment rights, the court could have inferred that the answer would have been adverse to appellant, instead of continuing to ask appellant questions. "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." *Phillips v. Deihm*, 213 Mich App 389, 400; 541 NW2d 566 (1995).

[13] MiCOURT, *People v Michelle Elowski Case Details*, <https://micourt.courts.michigan.gov/case-search/court/C23~4/case-details?caseId=2024-0000001954-FH&tenantKey=C23-68-1620853-00-00&searchUrl=%2Fcourt%2FC23~4%2Fsearch%3FlastName%3DElowski%26firstName%3Dmichelle%26page%3D1> (accessed March 30, 2026).

[14] See *In re Elowski*, 513 Mich 1049; 4 NW3d 70 (2024).

Moreover, because: (1) appellant had already testified, at the February 12, 2023 hearing, that she did not have any of the outstanding funds in either case, when she was supposed to be in possession of them; and (2) the trial court's contempt order simply ordered what it had been ordering throughout this case—that appellant provide an accounting of estate funds—we find no error warranting reversal. Considering the history of this case and appellant's unwillingness to turn over an accounting of funds, the trial court was undoubtedly going to order this accounting again regardless of what appellant admitted to at the proceeding.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace